### Will Coleman v. The State.

#### No. 4724.   Decided December 5, 1917.

**1.—Horse Theft—Charge of Court—Circumstantial Evidence.**

See opinion with reference to the charge of the court involving the possession of recently stolen property, circumstantial evidence, original taking, exculpatory testimony, etc.

**2.—Same—General Reputation—Veracity—Honesty—Preliminary Cross-examination.**

Where, upon trial of theft of a horse, defendant put his reputation for truth and veracity and honesty in evidence, and the State undertook to combat this by witnesses who stated that they knew the defendant's general reputation for truth and veracity, etc., the defendant should have then been permitted the right to examine the witnesss as to their means of knowledge before they were permitted to answer the general question that such general reputation was bad.   Following Warren, Executors, v. Brown, 51 Texas, 65, and other cases.

**3.—Same—Rule Stated—General Reputation.**

The first question to be asked appears to be "Are you acquainted with the general reputation for veracity or honesty of the witness?" and, if yes, the witness may then be interrogated as to the means of obtaining his knowledge, and such knowledge must be based upon general reputation and not upon personal knowledge.

**4.—Same—Examination of Witness—Conduct of Prosecuting Attorney.**

Where it appeared from the record on appeal, from a conviction of theft, that the witness' mind, after talking with the county attorney and after he had been placed in jail by the court after testifying for the defendant, seems to have been impressed with the idea that unless he changed his testimony he would be sent to the penitentiary, such examination is condemned by the decisions of this court.

Appeal from the District Court of Navarro.   Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of horse theft; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Simkins & Simkins,* for appellant.—On question of general reputation:   Brownlee v. State, 13 Texas Crim. App., 255, and cases cited in opinion.

Qualifying bills of exception:  Perry v. State, 155 S. W. Rep., 263; Graham v. State, 160 S. W. Rep., 715, and other cases cited in opinion.

Question of examining witness:  Tyson v. State, 14 Texas Crim. App., 388, and cases supra.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of bills of exception:  Best v. State, 164 S. W. Rep., 997; Conger v. State, 63 Texas Crim. Rep., 327.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of horse theft, his punishment being assessed at four years confinement in the penitentiary.

The case is one of circumstantial evidence.  The alleged owner, George West, testified that his horse was taken out of his lot at night. The next evening, about forty miles distant, appellant sold the horse. Appellant had a saddle that had some three months previously been stolen from the Witherspoon farm.  Appellant claimed that he sold the horse with the authority of West; that he did not take it, nor the saddle, but they were sent to him by West through a party named Williams. There is a great deal of testimony pro and con developing the different facts and circumstances unnecessary to be detailed.  Appellant sustained his account of his possession by witnesses who testified substantially that West and appellant together tried to sell this horse to Lancaster shortly before its disappearance.  This is a case then of circumstantial evidence based on the disappearance of the horse at night from its owner's possession, a sale by appellant the following day late in the evening, and a claim by appellant that he did not take the horse, but received it from West through his agent.

This involves several questions with reference to the charge of the court.  Complaint is made of these charges in different ways which will hardly occur upon another trial.  Possession of recently stolen property is but a circumstance and involves a charge on the law of circumstantial evidence, and a charge on the facts and circumstances with reference to explanation of possession.  If appellant obtained possession of the horse with the consent of the owner, there could be no theft. Where he gives an account of possession compatible with his innocence this must be submitted to the jury appropriately.  Where the State puts in evidence statements of appellant which are exculpatory, the State must disprove these to the satisfaction of the jury, and the jury must be so informed by the charge of the court.  The facts also raises the question of appellant's presence and participation in the original taking. If he received the horse and was not present at the time, it would suggest a charge to the effect that if he did not participate in the original taking he could not be guilty on the facts which showed he was only the receiver.  These propositons are stated generally with a view of a charge upon another trial.

Appellant put his reputation for truth and veracity in evidence.  The

State undertook to combat this. The State's witnesses, after being asked the general question, if they were acquainted with the general reputation of the defendant for truth and veracity, answered in the affirmative. When this point was reached appellant's counsel demanded the right to examine witnesses as to their means of knowledge before being permitted to answer the general question. The bill states the purpose of this was to show that their opinion was not based upon reputation, but from personal experience with the defendant, and this also with reference to his reputation for honesty and fair dealing, it also being an issue. These two matters are treated generally instead of specifically. The court refused to permit this cross-examination as an attack upon the predicate. So far as the bill of exceptions is concerned the court did not inform the witness that he must testify only from general reputation and not from his own personal knowledge of matters occurring between witness and appellant. The bills are lengthy and it is unnecessary to go further into the statements. These bills further show that the opinion of these witnesses and their testimony was based largely upon their individual ideas of appellant in regard to their dealings and contact with him. We are of opinion this was error. This has been the subject of decisions of this court as well as the Supreme Court of Texas and the Courts of Civil Appeals, and seems to be the general rule laid down by the Encyclopedia of Evidence, vol. 3, p. 45, and 40 Cyc., 2635.

In Johnson and Warren, Executors, v. Brown et al., 51 Texas, 65, the Supreme Court says: "We think the proper practice should be, that, after the impeaching witness has, prima facie, thus first qualified himself to speak of the general reputation of the witness (this to be decided by the court), then, before he answers the question as to what that reputation is, the opposite party, if he demands it, should have the right to cross-examine as to his means of knowledge; otherwise, if not qualified, and he has given his opinion then, as said by the Supreme Court of North Carolina, in the State v. Boswell, 2 Dev. (Law), p. 212, it may be too late to correct the error, as the injury has been done and an impression made on the minds of the jury which neither the charge of the court nor the remarks of counsel can entirely remove."

In the case of Clapp v. Engledow, 77 Texas, at page 256, the Supreme Court said: "It would seem the better practice to allow cross-examination upon the capacity of impeaching witnesses before allowing them to testify to such character," citing Brown v. Johnson, 51 Texas, 77.

In Encyclopedia of Evidence, vol. 3, p. 45, it was said: "It is considered proper practice in some jurisdictions to permit the witness, after answering the preliminary question and before saying what that reputation is, to be crossed as to the grounds for his belief that he has such knowledge." And in 40 Cyc., 2635, this language is found: "And it has been held proper to permit cross-examination as to these matters before the witness is permitted to give the impeaching testimony," citing

the case of McMillion v. Cook, 118 S. W. Rep., 775, which is also a Texas case.

In the case of McMillion v Cook, supra, the opinion was written by Mr. Chief Justice James of the Court of Civil Appeals for the Fourth District.   He says, "the proposition in the brief is that when the question was asked, appellant's counsel believed the witness would attempt to respond with an answer based upon some other opinion in the neighborhood than that of appellant's general reputation for truth and veracity, and should have been permitted to cross-examine the witness as to what he proposed to base his opinion upon, before permitting him to testify that his general reputation was bad.   The question put to the witness could not be understood other than as an inquiry into the general reputation of the party, or general opinion of the party in the community of the party's residence or acquaintanceship. . . . The proposition is a correct one, and it was error to refuse to allow counsel the opportunity to test his qualification.   The rule of practice is well settled in this State, for to allow the witness to give the testimony and permit counsel to develop the witness' disqualification only in a cross-examination, after the testimony is in would, as stated in Johnson v. Brown, 51 Texas, 77, place the party at the disadvantage of having an impression prematurely made on the minds of the jury, which neither the charge of the court nor the remarks of counsel could entirely remove.   See also, for rule, Clapp v. Engledow, 72 Texas, 256.   But should the judgment be reversed for such error, when it appears that counsel failed to make any cross-examination whatever of the witness? If he had done this and he had devloped what he expected he would have developed through a preliminary examination, he might have had the testimony of the witness stricken out by the court and the result of the trial might have been different."

Appellant may demand the right to examine the witness in regard to the predicate and should be permitted to examine him critically and develop that his conclusion was reached from personal matters and not from general reputation of appellant in these respects.   The court qualifies this bill by stating he gave the defendant the broadest and most unrestricted right of cross-examination of the witnesses in regard to these matters.   This was done after the witnesses had answered favorably to the State that the reputation was bad.   This came too late. It is not correct to say that an error of this sort may be corrected by reason of cross-examination.   A cross-examination of the witness with regard to illegitimate testimony does not remove the error of the court in admitting erroneous testimony.   Errors on introduction of testimony are not waived nor avoided by reason of cross-examination.   The error has been already committed, and the cross-examination is for the purpose of eliminating as much of the effect as is possible by such cross-examination.   The facts show that the opinion of these witnesses was based largely upon personal views and conclusions.   This was error for which the judgment must be reversed.

George West was used as a witness. The question of sustaining his reputation for truth and veracity and as a man of fair dealing also was injected into the trial. The writer is of opinion there was no predicate laid for supporting the witness West. These matters were not impeaching, but they were matters brought out on cross-examination, but if upon another trial a predicate is laid, then we meet with the same proposition just above discussed: when the ·witnesses to sustain West were offered appellant demanded the right to investigate these witnesses as to their means of knowledge, whether the reputation to which they were expected to testify was general or whether it arose from personal knowledge of West by the witnesses. The same ruling and same objections were urged in these bills of exception as in those with reference to appellant's reputation and standing. For the same reason the court committed error in regard to this matter.

Applicable to all these bills, the following· extract from Roswell v. State of North Carolina, 13 N. C. Rep., 184, is quoted: "The first question to be asked appears to be, are you acquainted with the general moral character of the witness whose credit is to be impeached? (1 Phil. Ev., 212; 4 Esp. Rep., 102). He may then be interrogated as to the means of obtaining his knowledge (Swift's Ev., 143). It is true, that, in Stark Ev., 147, it is said: 'When general evidence of this nature has been given to impeach the credit of a witness the opposite party may cross-examine as to the grounds upon which the belief is founded.' But it is then too late to correct the error; the injury has been done. An impression has been made on the minds of the jury, which neither the charge of the court, nor the remark of counsel can ·entirely remove. Thus may artifice gain an advantage to which honesty would disdain to stoop. A witness may be introduced, and express an opinion, when it may be known to the party offering him that his knowledge did not authorize its expression. Justice could be perverted and the rights of parties sacrificed by testimony which the rules of evidence were designed to exclude. Let it not be said that the error can be corrected, and the injury redressed by granting a new trial because of the introduction of improper evidence. Increased expense, delay and inconvenience must be the consequence. The opinion of the witness is forbidden ground on which the court should not tread until it be ascertained that it rests upon a firm foundation. Approved Downie v. Murphy, 18 N. C., 82; State v. Parks, 25 N. C., 296; Howell v. Howell, 32 N. C., 82, 469; State v. Spurlin, 118 N. C., 1250."

In this connection it may be further stated that appellant, after all these bills of exception had been reserved and the testimony gone before the jury, made motions to exclude it from the consideration of the jury. This was also overruled by the court. So appellant is not wanting in diligence in the preparation of his exceptions and proceedings to maintain his legal rights.

There is another question which is of serious moment, but deemed unnecessary to discuss, as it will not occur upon another trial. It is

this: Appellant's witness, Leon Harris, testified and the court ordered him arrested and carried to jail for perjury immediately upon his leaving the witness stand. He was carried to jail,. and the next day brought into court and testified exactly the opposite to what he had previously testified, the latter time for the State, denouncing his former testimony as false. This bill is lengthy, and shows the facts and circumstances with very lengthy explanations as the trial judge terms it of the matters as they occurred. It would be interesting but not of any particular value perhaps to narrate these matters and discuss them, but the witness' mind, after talking with the county attorney, seems to have been impressed with the idea that unless he changed his testimony he would be sent to the penitentiary. This matter as it occurred is condemned by the decisions of this court. This much is said so that it may not occur upon another trial, and doubtless will not. Much of the court's explanation are matters of fact de hors the record and improperly in the bill. If the judge wishes to state such matters in the bill he should testify as any other witness in regard to them.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*