**Raymond Earl JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 62038.**

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 24, 1982.

David R. Bires, Houston, for appellant.

Carol S. Vance, Dist. Atty. & Michael Kuhn & Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. States Atty., Austin, for the State.

Before DALLY, W.C. DAVIS and TEAGUE, JJ.

OPINION

TEAGUE, Judge.

Appellant was charged by indictment with committing the felony offense of aggravated robbery. A jury found him guilty and thereafter assessed his punishment at 15 years in the penitentiary. Appellant asserts three grounds of error in his appeal. We present them as issues of the case and

will entitle the issues as follows: 1) The jury misconduct issue; 2) The jury argument issue; 3) The failure of the trial judge to permit voir dire examination of a State's witness issue. We will overrule all of the grounds of error and reluctantly affirm the conviction.

### I. *The Facts of the Case*

Appellant does not challenge the sufficiency of the evidence. Viewed in a light most favorable to the verdict of the jury, the facts show that at approximately 3:00 O'Clock on a Saturday morning, while the complaining witness was sitting in her automobile, "A '77 blue Firebird", "putting my tapes up", outside Club Atlantis, a night-spot on Griggs Road in Houston, the appellant, who she did not know, approached her vehicle and asked her if she wanted "to smoke a joint" before she went into the night-spot. During this period of time, the driver's window to the complainant's vehicle was down. The complainant declined the appellant's offer, "to smoke a joint." Shortly thereafter, she was told by the appellant "to unlock the other side" of the car. Because the complainant saw that the appellant was armed with a loaded pistol, she acquiesced. After the appellant entered the complainant's vehicle, he robbed her of money, then abducted her, and thereafter instructed her to drive her vehicle down Griggs Road to Cullen Street, where she was to turn onto Cullen Street. She was then to drive to the end of Cullen Street. The complainant, with the appellant as her unwanted passenger, drove her vehicle down Griggs Road toward Cullen Street. While driving her vehicle, the appellant "rolled a joint" and offered it to the complainant. The complainant took "the joint", "inhaled it and handed it back to him." The complainant observed the appellant "put the [unused?] weed in his right sock." Thereafter, the appellant put the gun he had in his hand by his right leg. Because of a traffic light, it became necessary for the complainant to stop her vehicle. After the complainant stopped her vehicle at the traffic light, she then got out of her vehicle, ran and got into the backseat of a nearby moving taxi, screaming all the while: "Help me, help me. Oh, somebody, please, help me. He is going to kill me. Help me, help me." The female cab driver then drove the complainant to the cab stand out of which she worked; "Sky-Jack's Cab Company". Two policemen, who were patroling the area in a marked police vehicle, and who apparently had been dispatched, via a communication from the cab driver to her dispatcher to the police dispatcher, to go to the cab stand, were flagged down by unidentified persons and informed of what previously had occurred. At some unidentified point in time, after the complainant was taken to the cab stand, the appellant was seen driving the complainant's vehicle on the street in front of the cab stand. The record is not completely clear whether this occurred before or after the police officers were flagged down. Nevertheless, the complainant testified as follows: "When they got me out [of the cab], I turned around and I seen my car pass by. I said, 'There is my car right there. He stole my car. He followed me. He's come to kill me.'" Information concerning the type, make, etc., of the complainant's vehicle, as well as a description of the complainant's robber, was relayed to a police dispatcher, who in turn relayed it to all patrolling police units in the area. Soon after this, police officers who were in another police patrol unit saw a vehicle being driven by a person, which vehicle and driver matched the descriptions put out over the police radio by the police dispatcher. The police officers in the second police unit stopped the vehicle and arrested the driver, who turned out to be the appellant. The arresting policemen thereafter drove the police vehicle and the complainant's vehicle, with appellant in their custody and seated in the back seat of the patrol car, to the cab-stand, where an on-the-scene confrontation and identification occurred. The complainant positively identified the appellant as being one and the same person who had accosted, robbed, and abducted her when she was parked in front of the night-spot, Club Atlantis. A further search of the appellant at the cab-stand revealed a quantity of marihuana,

which was located in a baggy in a sock appellant was wearing, which was the same location where the complainant had seen the appellant "put the weed". A search of the complainant's vehicle at the cab-stand also revealed a .38 caliber derringer pistol, which was found under the driver's seat. The weapon was identified by the complainant as the gun appellant had exhibited to her. The complainant denied the gun belonged to her. "I'm scared of them... I have enough sense not to buy one."

The appellant's version of the facts was slightly contrary to the complainant's version. Appellant testified that he and the complainant had known each other for approximately two months. Appellant testified that the actions of the complainant were precipitated because she was jealous of appellant's "acquaintances with other women." Appellant also claimed that the complainant had threatened "to do something to [him]" because of his "acquaintances with other women." He denied that he had committed any of the acts he was accused of committing, claiming, inter alia, that he had let the complainant out of her vehicle when it was stopped at the traffic light because he and the complainant had had an argument, and she wanted to leave him. Because she wanted to leave, appellant testified that he did not try to stop her from getting out of the vehicle and leaving. The State presented several rebuttal witnesses who testified that they had never seen appellant and the complainant together. They also testified that the complainant's reputation for truth and veracity was good. The jury, by its verdict, accepted the State's version of the facts, and rejected the appellant's version.

## II. *The Jury Misconduct Issue*

The appellant, in one ground of error, complains of jury misconduct. The record reflects that prior to the jury being selected, apparently during the voir dire examination of the veniremen by the attorneys, one of the jurors,[1] made known to the trial judge and the attorneys the fact that she had attended elementary school with the complainant, and also made known to those persons that she and the complainant had previously attended the same church. Smith, however, told the attorneys and the trial judge that her past relationship with the complainant was not "buddy-buddy, nothing like that. It is just neutral. I just know her." She further stated: "I wouldn't be biased towards her or the Defendant..." Neither the appellant nor his attorney objected to the juror continuing her service as a juror in the cause, nor did they make any requests of the trial judge, such as instructing Smith not to discuss with the other prospective jurors her past relationship with the complainant. The juror then took her seat with the other veniremen, who apparently were seated at a distance from where the conversation the trial judge and the attorneys had had with Smith. Smith was selected as a member of the jury. After the appellant was arraigned, the trial judge excused the jury for the day. However, before excusing the jury, the trial judge "strongly" admonished the jurors that they would judge the case only by the admissible evidence they heard in the courtroom, and would not consider anything else. They were also admonished that although they could tell a husband, wife, boyfriend, or girlfriend where they had been that day, they were not, under any circumstances, to discuss the case with any of those persons.

Prior to excusing the jurors, and adjourning court for the day, the trial judge asked the attorneys if they desired him to give the jurors any further instructions. The attorneys politely responded in the negative. The next morning, other than making a motion in limine, which motion pertained to an apparent extraneous offense the appellant had allegedly committed, counsel for appellant made no other request of the trial judge. The motion in limine was granted. Thereafter, the trial commenced and was concluded after the jury found the appellant guilty and assessed his punishment at 15 years in the penitentiary.

---

1. Whom we shall call Smith, because her last name is Jones, which is also the same last name the appellant and the prosecuting attorney have.

Appellant filed a motion for new trial. At the first hearing on the appellant's motion for new trial, James Edward Gedeon, one of the jurors, testified. He testified that Smith told the other jurors, after jury selection, that she had known the complainant "at school," which statement Gedeon assumed meant "high school." Gedeon also testified that Smith told the other jurors that the complainant was "a quiet girl, kept to herself". Gedeon further testified that the statements Smith made to the jurors occurred during the punishment deliberations, but before a verdict was reached by the jury. Gedeon stated that another juror, probably the foreman, admonished Smith that "she shouldn't discuss that any further", and she did not do so. Gedeon also swore that Smith's comments did not affect his decision regarding the punishment assessed, and he would have voted to assess the same punishment that was assessed had he not heard the comments of Smith. Gedeon lastly testified that he had observed the complainant during recesses, and had concluded that "She appeared very, very shy."

For reasons that do not appear in the record, the hearing on the appellant's motion for new trial was conducted at separate times. Be that as it may, Robert Joachim, the foreman of the jury, and Smith testified at the second hearing. Joachim testified and confirmed what Gedeon had testified to at the first hearing. Joachim additionally testified that when Smith related to the jurors that she had known the complainant, another unidentified juror inquired whether she had told the attorneys and the trial judge of that fact. Smith responded in the affirmative. Joachim also testified that the comments Smith had made did not have any affect on either of his verdicts; either guilt or punishment. Smith also testified at the second hearing. She admitted that she had commented to the other jurors that she had known the complainant. However, she denied stating that she knew the complainant to be a "quiet and shy person". Smith also denied that she was asked if she had told the trial judge and the attorneys that she had known the complainant. However,.

it was developed during her testimony that the conversation Smith had had with the trial judge and the attorneys occurred during the voir dire examination, which fact is confirmed by the record of the appeal. Smith also testified that, as to her decisions as to the guilt and punishment of the appellant: "I went by what I heard on the stand, and that's as far as it went." After the trial judge sentenced the appellant, and he gave notice of appeal, the record reflects that the appellant himself stated into the record the following: "The juror know me, too, because I went to school with her. We went to the same school." The appellant also stated that he never relayed this information to anyone, which apparently included his attorney, because: "Didn't nobody ask me."

█ We are unable to say that the mere mention by the juror, Smith, to the other jurors, of what has been shown to be a very passive type relationship between the juror, Smith, and the complainant, is such misconduct as to warrant reversible error and the granting of a new trial. In this type juror misconduct, we find that the controlling factor in deciding whether a new trial is required is the character of the evidence, in light of the issues before the jury, and not the effect of such evidence on the jurors. *Garza v. State,* 630 S.W.2d 272, 274 (Tex.Cr. App.1982). See also *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr.App.1982); Art. 40.-03(7), V.A.C.C.P. We also observe that the comments Smith made to the other jurors did not relate to the appellant. Although appellant was not sworn when he made the statement that he, too, had attended school with the juror, Smith, we cannot overlook this fact in considering the character of the comments, as well as making the determination of what probable affect the statement may have had on the jurors. We believe that this Court's decision of *Pigg v. State,* 162 Tex.Cr.R. 521, 287 S.W.2d 673 (1956), controls the disposition we will make of this ground of error, as we find the facts here have many similarities to those set out in *Pigg,* supra. In *Pigg,* the juror did not advise the court or the attorneys of the fact

he had "casually" known the injured party for several years, until after the injured person had testified. The reason for the late disclosure was because the juror had poor eyesight and was unable to earlier recognize the injured party. After this fact was disclosed, the defendant's attorney moved for a mistrial, which was denied. This Court held: "The fact that the juror knew the witness 'only when he saw him' would not affect his verdict and was not grounds for a mistrial." We do not see any substantial difference between the past relationship the juror, Smith, had with the complainant in this cause and that of the juror and the injured party in *Pigg,* Id., although we do acknowledge that the juror in *Pigg* did not state to the other jurors anything about his casual relationship with the injured person, whereas here the juror, Smith, did make a casual remark to the other jurors as to her past relationship with the complainant. We are unable to state that the casual remarks Smith made were so detrimental to the appellant that it deprived him of a fair and impartial trial. See, however, *Stephenson v. State,* 571 S.W.2d 174 (Tex.Cr.App.1978). We also observe that appellant himself stated that he and Smith had attended an unidentified school at the same time. Smith was never questioned regarding this school relationship. Furthermore, by the fact that appellant and his attorney did not exercise one of their peremptory strikes on Smith, even after she divulged the fact that she and the complainant had had a passive type relationship, leads us to believe that at one point in time Smith was an acceptable juror to both appellant and his attorney. It was not until after the appellant was found guilty and assessed 15 years punishment that Smith became an unacceptable juror to the appellant and his attorney. Furthermore, although knowing that the juror had had a past relationship with the complainant, albeit we have concluded it was a most casual and passive one, neither the appellant nor his attorney took any special precautions, such as asking the trial judge to give any special instructions to Smith. Lastly, by the facts of the case, we note

that neither the character or personality traits of the complainant for being either "quiet" or "shy" were in issue. Thus, it appears to us that whether the complainant was an outgoing or gregarious type person or was a quiet or shy type person would not have had any bearing on the appellant's guilt or the punishment that was assessed. We are unable to say, in light of the record, that the trial court abused its discretion in overruling the appellant's motion for new trial. The Appellant's ground of error is overruled.

## III. *The Jury Argument Issue*

Appellant complains in another ground of error of a portion of the prosecuting attorney's final jury argument that was made at the punishment stage of the trial.

The first portion of the complained of argument is as follows:

> If you decide to give him [appellant] probation, that's your business. You are the boss here. I am the public servant. I can only plead with you and ask you as your public servant, *based on the knowledge I have had in five and a half years of prosecuting, I specifically ask you for not less than fifteen years and a day.* That day is significant or I wouldn't ask for it, as the very minimum. Should you think this man should get more time for his brutality, more time for the way he has treated people, more time for the way he goes on in his life, then you should give it to him. But I ask you for nothing less than fifteen and a day. [Emphasis Added]

The appellant did not object to this argument. The prosecuting attorney, after arguing the above, *immediately* argued the following:

> This charge specifically orders you, you are not to discuss among yourselves how long the accused will be required to serve the sentence that you impose. Such matters come exclusively within the jurisdiction of the Board of Pardons and Paroles.

Immediately after this statement, the appellant's trial counsel made the following

objection and request, both of which were overruled: "I object to the manner in which Mr. Jones [the prosecuting attorney] has just conducted himself in the presence of the jury... I ask that the Judge instruct the jury to disregard the manner in which he [Jones] has conducted himself and the emphasis that has been placed on the material that he just read to the jury."

The appellant, under this ground of error, beseeches this Court to do the following in its consideration of this ground of error. "The Appellant asks that the last section of the final argument of the prosecutor be read as a whole. Otherwise, the last paragraph on its face might not be an improper argument." We construe this request to mean that appellant wishes this Court to overlook the fact that he did not object to the first portion of the argument, but because he made an objection at the end of all of the complained of argument, this is sufficient to preserve his error. Although we can understand why appellant has made this request, see infra, we are unable to grant the request.

■ We first observe that had appellant's counsel made an earlier and proper objection, *and* had the trial judge overruled the objection, the first part of the argument would have troubled us greatly, because it is difficult to distinguish the prosecutor's argument here and the one made in *Hughes v. State,* 563 S.W.2d 581, 587 (Tex. Cr.App.1978). This Court in *Hughes* held that it was improper for the prosecuting attorney in that cause to argue the following: "I know this, that out of the thirteen of us I am the more expert at assessing punishment for crimes and for assessing penalties." However, this Court held in *Hughes* that because the trial court had instructed the jury to disregard the above argument, the error was rendered harmless by the instruction. See also *Irving v. State,* 573 S.W.2d 5 (Tex.Cr.App.1978); *Berryhill v. State,* 501 S.W.2d 86 (Tex.Cr.App.1973). We believe in this instance that if a timely objection had been made to the first part of the prosecuting attorney's argument, *and* the trial judge had sustained the objection

and given the jury a proper instruction, the instruction would have been sufficient to cure the error. *Hughes,* supra. Cf. *Clanton v. State,* 528 S.W.2d 250 (Tex.Cr.App. 1975); *Jones v. State,* 522 S.W.2d 225 (Tex. Cr.App.1975). Compare, however, *Bryant v. State,* 455 S.W.2d 235 (Tex.Cr.App.1970), where the prosecutor argued in part, without objection: "I have got to get twelve. I have got to get twelve hard ones..." This Court rejected the defendant's complaint because, among other reasons, there was neither an objection nor a request for an instruction to the jury to disregard; thus, the error was not preserved. Although we have grave doubts that the objection that was finally made was sufficient to complain of the argument immediately preceding the objection, nevertheless, we find that by comparing the trial judge's written instruction to the jury, "on the parole law," with the pertinent part of the prosecuting attorney's argument, the argument reflects only that the prosecuting attorney merely read, almost verbatim, that portion of the charge. In *Sandlin v. State,* 477 S.W.2d 870 (Tex.Cr. App.1972), an almost identical argument to that made here was also made. This Court stated the following: "This statement merely paraphrased the court's charge and does not constitute a comment on the operation of the laws regarding paroles. No reversible error is shown. See generally, *Hernandez v. State,* 366 S.W.2d 575 [Tex.Cr. App.] (1963)." See also *Campbell v. State,* 492 S.W.2d 956 (Tex.Cr.App.1973). Appellant's ground of error is, therefore, overruled.

IV. *The failure of the trial judge to permit voir dire examination of a State's witness issue*

Appellant's first, but for discussion purposes the last ground of error we will review, and what we have found to be, in light of the record of appeal and past decisional law of this Court, the most disturbing ground of error before us, is phrased as follows: "The trial judge erred when he failed to allow appellant's counsel to take Nancy Strebeck, a character witness, used to impeach the appellant's character trait

for truth and veracity, on *voir dire,* in order to test her qualification to properly testify."

The record of appeal reflects that after the appellant rested the prosecuting attorney announced he intended to call rebuttal witnesses, "as to the reputation of the Defendant. . . Truth and veracity." See *Mirowitz v. State,* 449 S.W.2d 475 (Tex.Cr. App.1970). Thereafter, the appellant's attorney, strenuously but without success, requested that he be allowed to voir dire the witnesses outside of the presence of the jury to determine if in fact they were qualified to testify to the appellant's general character traits in the community for truth and veracity. We find that the trial judge, by refusing the appellant's attorney's request, erred.

The record of appeal also reflects the following:

THE COURT: See how lucky you are [that I am not going to let you voir dire the witnesses outside the presence of the jury]. If I overrule you, you have . . . built-in [reversible error] in the appeal.

DEFENSE ATTORNEY: Who wants to win an appeal? I want to take this case on right now.

THE COURT: You would be happy [to have built-in reversible error].

Thereafter, the complainant testified as a true rebuttal witness. After she testified as a "true" rebuttal witness, the prosecuting attorney announced again he was going to call several "reputation witnesses" to testify to the appellant's and the complaining witness' general character traits for truth and veracity. Appellant's counsel again made an unsuccessful effort to voir dire these witnesses. The record reflects that David Aaron Hull, a fellow employee of the complainant; Nanette Rideout, a sister of the complainant; and Melanie Wright, another fellow employee of the complainant, all testified as either rebuttal or "reputation" witnesses, or testified in the capacity of both types of witnesses. In light of present case law, appellant, understandably, makes no complaint about the qualifications of the above witnesses or of the right the State had to present the wit-

nesses when it did. See *O'Bryan v. State,* 591 S.W.2d 464, 476–477 (Tex.Cr.App.1979); *Creech v. State,* 168 Tex.Cr.R. 422, 329 S.W.2d 290 (1959).

However, appellant does complain of another witness, Nancy Strebeck, a Houston police officer, who testified that in her opinion appellant's reputation in the community for being truthful was bad. When Strebeck was called to testify, appellant made another effort to voir dire Strebeck before she testified. However, this effort proved futile. Strebeck thereafter testified that she knew the appellant's reputation in the community "for truth and veracity", and further testified that it was bad. When passed for cross-examination, appellant's attorney made another effort, also futile, to voir dire the witness. Strebeck was the only witness for the State who testified that appellant's general character-reputation trait in the community for being truthful was bad. For reasons too obvious to state, it is understandable why appellant's counsel did not in the presence of the jury cross-examine this police officer-character-reputation witness.

Thereafter, a complaining witness in an extraneous cause was called to testify. However, after a "bench conference", where the appellant's counsel made a proffer of proof, which in turn resulted in a hearing held outside the jury's presence regarding the witness's qualifications to testify, appellant's counsel's objection to the witness testifying was thereafter sustained. The witness, Rovenia McGee, was not allowed to testify as to the reputation of the appellant for being a truthful person.

■ We wholeheartedly agree with the appellant and his counsel that the trial judge erred by refusing to allow appellant's counsel the right to voir dire the witness, Strebeck, prior to her testifying. Because of the many decisions of this Court on this point, we are compelled to classify such error as "grievous error". See, for example, *Gholson v. State,* 542 S.W.2d 395, 402 (Tex.Cr.App.1976); *Curtis v. State,* 519 S.W.2d 883, 888 (Tex.Cr.App.1975); *Gleffe v. State,* 501 S.W.2d 672 (Tex.Cr.App.1973); *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.

App.1972). The proper procedure to be followed is set out in *Crawford v. State,* Id. See also *Coleman v. State,* 82 Tex.Cr.R. 332, 199 S.W. 473 (1917). In *Crawford v. State,* op.cit., this Court stated the following: "The procedure to be followed is to permit the opposing party to test the qualification of the witness before he testifies as to the defendant's reputation... if the witness is permitted to first give his opinion and it is then determined that he was not qualified to give such opinion, harm which cannot be cured may be done." For the very obvious reason that was stated in *Crawford,* Id., the voir dire examination should always occur outside the jury's presence. *Gholson,* supra, at page 402.

After the jury retired to deliberate in this cause, the appellant's attorney attempted to call Strebeck to testify "to allow me to make a bill." By the record of appeal, this appears to have been the most opportune time for the appellant to have further perfected his error regarding Strebeck. This request was, as were all prior requests to voir dire Strebeck, denied by the trial judge. Thereafter, appellant's counsel, under oath, testified and made a proffer of proof of why Strebeck was not qualified to testify.

We have carefully reviewed the record regarding appellant's contention. However, we are unable to find anywhere therein any kind of proof or offer of proof that would show Strebeck was not qualified to give her opinion as to the appellant's character-reputation trait for being truthful. For discussions regarding the proper predicate for such a witness to testify, see *Jackson v. State,* 628 S.W.2d 446, 450, fn. 2 (Tex.Cr.App.1982); *Zanders v. State,* 515 S.W.2d 907 (Tex.Cr.App.1974); *Wilson v. State,* 434 S.W.2d 873 (Tex.Cr.App.1968); *Stephens v. State,* 522 S.W.2d 924 (Tex.Cr. App.1975); *Wright v. State,* 609 S.W.2d 801 (Tex.Cr.App.1980); *Watson v. State,* 605 S.W.2d 877 (Tex.Cr.App.1980); *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979). At no time when appellant's counsel made his proffer of proof did he state any valid legal reasons why Strebeck was not a qualified witness.

Because the record of appeal does not show that Strebeck was not unqualified to testify, appellant's ground of error is overruled. Although we strongly disapprove of the refusal of the trial judge in this cause to allow appellant's counsel to question Strebeck on the record and outside the presence of the jury, in order to determine whether she was a qualified character-reputation witness, the law is unquestionably clear, as reflected by many of the above cases, that the mere refusal of a trial judge to allow voir dire examination of such a witness as Strebeck, though error, is not per se reversible error. For the reasons stated, the error here did not rise to the level of reversible error. The ground of error is overruled.

The judgment of conviction is affirmed.

DALLY, J., concurs in the result.