# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00169-CR

**Mario Romo, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. 00-2162, HONORABLE BOB PERKINS, JUDGE PRESIDING

A jury found appellant guilty of aggravated assault with a deadly weapon.  *See* Tex. Pen. Code Ann. §§ 22.02(a)(2), 22.01(a)(2) (West 1994).  After appellant pleaded true to the punishment enhancement paragraph alleged in the indictment, the jury assessed punishment at twenty-five years in prison.  Appellant contends (1) the evidence was insufficient to support the conviction; (2) the court erred by denying him a hearing on his motion for new trial; and (3) the court erred by allowing the State to argue that the jury could consider parole when assessing appellant's punishment. We will affirm the conviction.

### Background

On February 17, 2000, the complainant, Norman Barnette, arrived home from work in the evening and found several dogs roaming unattended in his yard.  Barnette had a longstanding

problem with dogs roaming in his yard. He shooed the dogs away, and the dogs ran through the neighborhood creek back towards their house. Shortly thereafter, Barnette noticed another dog roaming in his yard and also shooed that dog towards the creek. Barnette followed the dog back to the creek and came upon appellant, who was standing in the creek. Appellant's left arm was resting on a railroad tie standing on its end and his right hand was behind his back. According to Barnette, appellant said, "What the f--- you doing to my dogs?" Barnette told appellant to keep his dogs penned in his backyard so that they would stay out of his yard and trash. Appellant responded stating, "You leave my m----- f------ dogs alone. If you don't I'll shoot your m----- f------ a--." While the two men were exchanging words, Barnette noticed three boys walking towards him, one of whom was Barnette's next door neighbor, fifteen-year-old Gabriel Munoz. As Barnette turned away and started to walk across the street toward his home, he heard two gunshots in rapid succession, he heard the boys yell, "gunshot," and he quickly ducked behind a parked car. He thought he could hear appellant running through the creek toward his own home. Barnette called 911 from his cell phone and police officers arrived about five minutes later.

Munoz testified that appellant's dogs often ran loose in the neighborhood. Munoz saw appellant arguing with Barnette and then saw appellant shoot at Barnette as he walked away. Munoz saw the projectile ricochet off the sidewalk, and he and his two friends ran in the opposite direction. Munoz identified appellant in a police photo lineup and in court as the person who shot at Barnette. Andrew Chavarria was one of the other boys with Munoz. He saw Barnette chase some dogs toward appellant. He then heard Barnette and appellant arguing. He testified that Barnette did not threaten appellant but told him that he did not want the dogs in his yard. Chavarria then heard appellant

2

threaten to shoot Barnette. Chavarria saw appellant raise a small handgun and fire it at Barnette as his back was turned.

Austin police officer Anthony Hipolito was dispatched to respond to Barnette's 911 call. Barnette was excited, shaken up and scared when he flagged down Hipolito and told him that he had argued with a neighbor about dogs roaming in his yard and that the neighbor had fired a gun at him. Barnette showed Officer Hipolito where appellant lived. Officer Hipolito found appellant watering the grass in his front yard. It appeared that appellant had not been watering for very long because the ground was not very wet or muddy. Officer Hipolito drove appellant in the back of his squad car to Barnette's house where Barnette identified appellant as the person who threatened him. Other police officers arrived, spoke with witnesses, and obtained consent to search appellant's house. The officers searched the house for about ten to fifteen minutes but found no gun. Officer Hipolito arrested appellant and conducted an atomic absorption test on his hands which revealed significant levels of barium and lead, two components of gunshot powder residue.

**Discussion**

*Sufficiency of the evidence*

To convict appellant of aggravated assault, the jury was required to find that he intentionally or knowingly threatened Barnette with imminent bodily injury and either used or exhibited a deadly weapon during the commission of the assault. *See* Tex. Pen. Code Ann. §§ 22.01(a)(2), 22.02(a)(2) (West 1994). Appellant contends that the evidence was legally insufficient to show that he threatened Barnette with imminent bodily injury.

3

In reviewing appellant's legal sufficiency challenge, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The trier of fact is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Jones*, 944 S.W.2d at 647.

Appellant contends that the evidence did not prove a threat of imminent bodily injury, but merely showed a conditional threat to kill Barnette at some time in the future if Barnette bothered appellant's dogs. Appellant contends that his threat was conditioned upon a future occurrence and a condition precedent. In aggravated assault cases, "imminent" has been interpreted as meaning "on the verge of happening." *See Hill v. State*, 844 S.W.2d 937, 938 (Tex. App.—Eastland 1992, no pet.) (citing *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)).

Viewing the evidence in the light most favorable to the verdict, the evidence showed that appellant, in a face-to-face confrontation with his right hand held behind his back, threatened to shoot Barnette if he did not leave appellant's dogs alone. Munoz and Chavarria saw appellant raise a handgun and shoot at Barnette. Appellant's overt act in shooting at Barnette showed that his threat of bodily injury was near at hand and not a threat of harm at some unknown time in the future. Based on appellant's gunshots, the threat of bodily injury was indeed on the verge of happening. We hold that the evidence was sufficient to show that appellant threatened Barnette with imminent bodily injury and that he committed aggravated assault. Appellant's first issue is overruled.

*Denial of a hearing on motion for new trial*

Appellant contends that the trial court erred when it failed to hold a hearing on his motion for new trial which raised issues that were not determinable from the record and instead overruled his motion by operation of law. Appellant contends on appeal, as he did in his motion for new trial and the attached affidavit from his trial counsel, that (1) he was not a native English speaker, he had difficulty understanding the trial proceedings, and he did not have the aid of a translator; and (2) that after trial, defense counsel learned that the State failed to disclose written witness statements containing possible exculpatory or impeachment evidence.

The State responds that although appellant timely filed his motion for new trial, appellant waived this issue because he failed to properly *present* his motion for new trial to the trial court as required by Rule 21.6. *See* Tex. R. App. P. 21.6. Additionally, the State argues that even if appellant properly presented his motion for new trial, the trial court did not abuse its discretion by failing to hold a hearing because neither the motion for new trial nor the supporting affidavit presented matters that were not determinable from the record.

If a defendant desires a hearing on a motion for new trial, it is incumbent upon the defendant to present the motion to the trial court within ten days of filing the motion in order to put the trial court on actual notice that he desires the trial court to take some action on the motion for new trial. *See* Tex. R. App. P. 21.6; *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998). When a defendant properly presents a motion for new trial raising matters not determinable from the record, upon which he could be entitled to relief, the trial court abuses its discretion in failing to hold a hearing. Tex. R. App. P. 21.7; *see also Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App.

5

1993) (decided under former Texas Rule of Appellate Procedure 31(d) which is essentially the same as current Texas Rule of Appellate Procedure 21.7). The term "present" means the record must show that the movant for a new trial actually delivered the motion for new trial to the trial court or otherwise brought the motion to the attention of the trial court. *Carranza*, 960 S.W.2d at 79. Thus, the mere filing of a motion for new trial alone is not sufficient to show presentment. *Id.* at 80; *see Reyes*, 849 S.W.2d at 815. "Presentment must result in actual notice to the trial court and may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket." *Carranza*, 960 S.W.2d at 79-80. It has been held that actual notice to the court coordinator is effective to satisfy the presentment requirement. *Butler v. State*, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

In this case, the only evidence of presentment is a document attached to appellant's motion for new trial titled "Certificate of Presentation" which was signed by his attorney. The certificate provides, "I hereby certify that on November 17th, 2000, I have presented / attempted to present the foregoing motion for new trial to the District Court within 10 days of filing as required by law." The word "presented" appears to be circled on the certificate. There is no file stamp or notation on the certificate from either the judge or the court coordinator that indicates that either of them reviewed the certificate. *See Butler*, 6 S.W.2d at 641 n.7; *Carranza*, 960 S.W.2d at 81. Further, there is no entry on the docket sheet indicating that the motion for new trial was received by the court coordinator or the trial judge. Moreover, other than the certificate of presentation, there is no indication in the record that defense counsel ever requested a hearing on the motion for new trial. A self-serving statement by a defense counsel, without more, has been held to be insufficient

6

evidence of presentment to the trial court. *See Owens v. State*, 832 S.W.2d 109, 111 (Tex. App.—Dallas 1992, no pet.) (document styled "certification of presentment" and signed by defense counsel is insufficient evidence of presentment). Under the facts of this case, as there was no notation or indication in the record by the court coordinator or the trial judge that appellant brought the motion for new trial to the attention of either of them, we hold that appellant failed to show that the motion for new trial was properly presented as required by appellate procedure rule 21.6.

Regardless of the presentment issue, however, even if we assume that the motion for new trial was properly presented, we would still hold the trial court did not abuse its discretion in failing to order a hearing on the motion for new trial. A defendant does not have an absolute right to a hearing on a motion for new trial. *Reyes*, 849 S.W.2d at 815; *Bruno v. State*, 916 S.W.2d 4, 8 (Tex. App.—Houston [1st Dist.] 1995, no pet.). A trial court abuses its discretion in failing to hold a hearing when the defendant asserts reasonable grounds—not determinable from the record—for granting a new trial. *Reyes*, 849 S.W.2d at 816.

Appellant argues that while the record disclosed that he had some working knowledge of the English language, it was unclear the extent to which his knowledge of the language rendered him legally competent to be tried in English. Appellant contends that the record is unclear whether he could adequately follow the proceedings in English or whether he could meaningfully consult with his counsel during the proceedings, and that it was incumbent upon the trial court to grant a hearing on the motion for new trial and provide him an opportunity to develop the record in this regard. Additionally, appellant contends that a hearing was required to determine whether the State withheld from appellant witness statements that contained exculpatory or impeachment evidence.

7

First, regarding appellant's alleged difficulty in understanding the court proceedings in English due to his lack of proficiency in the English language, the record reflects that appellant's threats to Barnette were in English. During his arraignment, appellant stated in English that he understood the allegations in the indictment, had timely received a copy of the indictment, and waived the reading of the indictment. Before trial, the judge engaged appellant in a discussion in English regarding the State's plea bargain offer during which appellant refused to plead guilty to aggravated assault but stated, "non-aggravated, I'll take that right away." Appellant's trial counsel requested an interpreter for appellant's wife when she testified but did not request an interpreter for appellant. It may be inferred from this that appellant's trial counsel determined that appellant did not require an interpreter to understand the court proceedings and the trial testimony. Further, the record shows that appellant and his counsel discussed a punishment offer by the State in the event the jury returned with a guilty verdict. Additionally, appellant pleaded true to the punishment enhancement allegation stating, "They found me guilty, sir. I guess it's true." Finally, appellant had a prior conviction in 1982 for aggravated robbery and, therefore, had prior experience with courtroom proceedings and a jury trial.

We hold that a hearing on the motion for new trial was not required as regards appellant's English language issue as it was determinable from the record that appellant spoke and understood the English language, understood the courtroom proceedings, and communicated effectively with his counsel about the proceedings.

Second, we address appellant's allegation that the State failed to disclose witness statements that may contain exculpatory and impeachment evidence until after trial. In the motion

8

for new trial and the supporting affidavit, appellant failed to identify the witnesses in question or describe the alleged exculpatory evidence. Moreover, the trial record reflects that appellant did not ask for the written statements of any of the State's witnesses except for Officer Hipolito, of whom appellant requested and received his offense report from the State. *See* Tex. R. Evid. 615(a) (after witness testifies, trial court shall, on defendant's motion, order State's attorney to produce for defendant's examination and use any statement of witness in its possession). Finally, appellant failed to allege how the undisclosed evidence would have affected the jury's verdict. We hold that a hearing on the motion for new trial was not required regarding appellant's contention that the State failed to timely disclose witness statements. Having concluded that appellant has failed to show that the trial court erred by failing to conduct a hearing on appellant's motion for new trial, appellant's second issue is overruled.

### *Jury Argument*

Finally, appellant contends that the trial court erroneously allowed the prosecutor to make improper jury arguments during the punishment phase of trial by inviting the jury to consider parole when assessing appellant's sentence. The State responds that the prosecutor did not invite the jury to consider or apply the parole law in assessing appellant's punishment but that the prosecutor explained or paraphrased the portion of the court's jury charge about parole law.

The trial court instructed the jury about parole as follows:

> It is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

It cannot be predicted how the parole law . . . might be applied to this defendant if he is sentenced to imprisonment, because the application of [the law] will depend upon decisions made by prison and parole authorities.

You may consider the existence of the parole law. . . . You are not to consider the manner in which the parole law may be applied to this particular defendant.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

During closing argument at the punishment phase, the prosecutor argued:

When you're looking at this let me tell you a couple of things that might help you in your deliberation. [Ninety-nine] or life, really we don't want you to get bogged down on that. There's not a lot of difference. There's no difference, in fact. If you look at the charge under paragraph I the Court specifically told you if the defendant is sentenced to a term of imprisonment he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. That is why I have written this number up here, 60. Because really that is the maximum amount you can realistically give this man before he is eligible for parole. In other words, half of 60 would be 30. For example, if you gave 40, that half would be 20, and so whichever is less would govern. The 20 would government [sic] if you gave that 40.

Appellant objected and asserted:

[The State was] making an argument as to the eligibility of parole and disregarding further instructions in the charge that the eligibility for parole is not a fixed mandate for release. And she's making an appeal to the jurors that by giving him 60 or more they're going to keep him in there, that 60 is what he's going to get, no matter what.

The court disagreed and overruled the objection. The State continued its argument:

10

Ladies and gentlemen, I'm telling you things so you won't get bogged down on some of the numbers. Life and 99, there would be no difference because basically under the law that the Judge has given you the defendant is eligible for parole at 30 years or one-half of the sentence imposed, whichever is less. And that's how the 60 is a magic number. Okay. And you can look at that back there. We don't [sic] you to get hung up on some of these things.

Prosecutors must exercise caution when arguing parole eligibility to a jury. Article 37.07, section (4)(a) explicitly prohibits a jury from considering parole eligibility with respect to the defendant on trial. Tex. Code Crim. Proc. Ann. art. 37.07 § (4)(a) (Vernon Supp. 1995). Instead, a jury may only consider the concept of parole eligibility in general. *Id.* Consequently, when attempting to explain the existence of parole law as set forth in the trial court's charge, a prosecutor must avoid applying the law to the defendant on trial. *Kearney v. State*, 630 S.W.2d 934, 935 (Tex. Crim. App. 1982) (quoting *Clanton v. State*, 528 S.W.2d 250, 252 (Tex. Crim. App. 1975)); *Clark v. State*, 643 S.W.2d 723, 724 (Tex. Crim. App. 1982); *Clay v. State*, 741 S.W.2d 209, 211 (Tex. App.—Dallas 1987, pet. ref'd). A prosecutor may, however, quote or paraphrase the jury charge so long as the prosecutor does not misstate the law or present a statement of law contrary to that presented in the charge. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990) (citing *Jones v. State*, 641 S.W.2d 545, 550 (Tex. Crim. App. 1982), *Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983)); *see also Sandlin v. State*, 477 870, 873 (Tex. Crim. App. 1972).

Here, comparing the charge and the complained of portions of the argument, the prosecutor did not assert a legal proposition contrary to the court's charge to the jury, misstate the law, encourage the jury to consider the existence of the parole law in assessing punishment, or suggest a punishment to offset the parole law's application or effect. *Cf. Clay*, 741 S.W.2d at 210-11

11

(jury argument "[this defendant] if he behaves well, . . . may get out when he's supposed to. If he doesn't, they may keep him there a little longer;" improper because prosecutor intermixed specifics about defendant's potential for parole eligibility with general discussion of parole law); *Jones v. State*, 725 S.W.2d 770, 771-72 (Tex. App.—Dallas 1987, pet. ref'd) (jury argument, "In this particular case, because it is an aggravated robbery, any sentence that you give will be cut by effect of the parole laws. . . . So, I'm asking for a twenty year sentence, calendar time in the penitentiary. In order to accomplish that, you must give at least a sixty-year sentence in order to keep him in the penitentiary for twenty calendar years. Okay?"; improper because urged jury to act contrary to charge instructions by applying parole laws to defendant and was misstatement of law because implied only way defendant could possibly serve twenty calendar years was if jury assessed sixty-year sentence).

The prosecutor's remarks regarding parole were an attempt to explain the parole law charge and to demonstrate that there was no practical difference between a 99-year sentence and a life sentence for example. While the prosecutor mentioned "this man" during the argument, the prosecutor did not apply the parole law to appellant nor did the prosecutor encourage the jury to consider the effect of the parole law when they assessed appellant's punishment. In fact, the prosecutor encouraged the jury to not get "bogged down" with the numbers or to get "hung up" with how the parole law worked. The prosecutor told the jury that the lead attorney for the State would discuss in his portion of closing argument what the State thought would be an appropriate punishment for appellant. Also, we note that the State later suggested that the appropriate punishment began at eleven years which was one year more than appellant received for his prior aggravated robbery conviction. Comparing the charge with the prosecutor's argument, we hold that the complained of

12

argument does not go beyond explaining or paraphrasing the parole portion of the jury charge. Appellant's third issue is overruled. We affirm the judgment.

    —

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 22, 2002

Do Not Publish