In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-00411-CR


NO. 09-08-00412-CR


 _____________________



JAMES LESLIE KESMAN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause Nos. B-070770-R and B-070773-R






MEMORANDUM OPINION



 James Leslie Kesman pled guilty to aggravated sexual assault and to two counts of
indecency with a child. The jury assessed punishment for each offense. The indecency-with-a-child judgment provided that the two twenty-year sentences for indecency with a child
would run concurrently with the eighty-year sentence for aggravated sexual assault. 

 In his sole issue on appeal, Kesman argues the trial court erred by refusing to allow
him to contest the qualifications of a character witness prior to her testimony. During the
punishment phase, the State called the complainant's mother (B.L.H.) to testify concerning
her opinion of Kesman's character. The following exchange occurred:

 Q: [Prosecutor]: Ms. [B.L.H.], based on your knowledge of this defendant
and the number of years that you've known him, visiting in his home, have you
had an opportunity to form an opinion about his character?


 [Defense Counsel]: May I take her on voir dire to see just how well she knows
[J.L.K.]?


 [Court]: No, you can address it on cross.


 [Defense Counsel]: Thank you, Your Honor. 


 A: [B.L.H.]: He is not what you think he is. He looks like a kind,
grandfatherly man. He's easy to talk to. He's friendly. He's surrounded by
little girls. He's a dangerous man. He's a sneaky snake.

 . . . .

 

Defense counsel then cross-examined B.L.H. 


 Q: [Defense Counsel]: Ms. [B.L.H.] How well you do know Mr. [J.L.K.], as
far as how many times you talked to him on the telephone during this period
of time. Did you talk to him weekly, monthly?


 A: Probably at least once a month. 


 Q: For what period of time?


 A: Well, I haven't talked to him since 2007. This all came out in December,
of 2006, and I have not talked to him since.

 

 Q: And that's why I ask. Once a month for what period of time?

 

 A: Since I met him, probably in 2004. He would send cards to my children,
and I always read their mail.

 

 Q: And you quit communicating with him when?

 

 A: When everything came out in December of -

 

 Q: '05?

 

 A: No, that's not true. The truth came out in probably February, 2007. That
was when the truth came out.

 

 Q: So from 2004 to 2007, a once a month phone call? Would that be fair? 
I'm just trying to narrow it down.


 A: Yes. Whenever he called my children, or call me or want to talk with the
children, I'd talk with him. I have been in his home a number of times.


 Q: I'm fixing to get in to that. How many times face to face have you met
[J.L.K.]?

 

 A: Probably a dozen, at least. When I moved to Cleveland - when I was in
Beaumont looking for home, [J.L.K.] went with me. He took me several days
around looking for a home in Rose City, or wherever trying to find a place to
live.

 

 Q: So thirty or forty phone calls. I'm trying to be generous there. And about
a dozen times you've met with him face to face; is that correct?


 A: At least.


 Q: And then based on that you know him well?

 

 A: Apparently I didn't know the man at all.


 In Jones v. State, 641 S.W.2d 545 (Tex. Crim. App. 1982), the Court of Criminal
Appeals held it was error for the trial court to refuse appellant's request to voir dire a
reputation witness prior to her testimony before the jury, but found the error harmless. Id.
at 550-52; see also Scott v. State, 162 S.W.3d 397, 402-03, 406-07 (Tex. App.--Beaumont
2005, pet. denied). Although the trial court erred by refusing to allow defense counsel --
prior to B.L.H.'s testimony before the jury -- to question her qualifications to testify
regarding her opinion, Kesman did not object to her testimony. See Tex. R. App. P. 33.1. 

 Furthermore, under rule 44.2(b) of the Texas Rules of Appellate Procedure, errors in
criminal cases which do not affect substantial rights are to be disregarded. Tex. R. App. P.
44.2(b). "A substantial right is affected when the error had a substantial and injurious effect
or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90
L.Ed. 1557 (1946)). Evidence that assists the jury in determining punishment is admissible
under article 37.07 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2008). In Sims v. State, the Court of Criminal
Appeals stated that "[a]rticle 37.07 § 3(a)(1) allows for admission of any evidence the trial
court 'deems relevant to sentencing.'" Sims v. State, 273 S.W.3d 291, 295 (Tex. Crim. App.
2008) (quoting Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)). Under article 37.07,
character evidence in the form of opinion testimony is admissible at the punishment phase
of trial. Id. at 296. A witness's opinion of the defendant's character "must be based on
'enough personal association with the defendant so that it is rational to infer that his or her
opinion as to the defendant's character is based on the witness'[s] personal experience with
the defendant.'" Id. (quoting George E. Dix & Robert O. Dawson, 43 Tex. Criminal
Practice & Procedure § 38.33, at 671 (2d ed. 2001)). 

 The record establishes B.L.H. had sufficient personal contact with Kesman to allow
the jury to infer that her opinion of his character was based on her personal experience with
him. B.L.H. had talked with Kesman on the telephone numerous times over the course of
a three-year period; she had been in his home a number of times; he had gone with her to
assist her in finding a house to buy; she allowed her children to be at his home and in the
teenage band that practiced in his house; and she gave him instructions concerning her
daughters' computer use at his house and told him never to touch her daughters. B.L.H.'s
testimony establishes she knew Kesman sufficiently well to permit her opinion to be
conveyed to the jury, with the jury determining the weight to be given the testimony.

 Kesman argues that B.L.H., in giving her opinion of his character, should not have
been allowed to engage in name-calling or to make derogatory remarks. Kesman asserts that
B.L.H.'s characterization of him as a "sneaky snake" and other witnesses' descriptions of
him as a person "lacking in some morals" and a "wolf in sheep's clothing" represent an ad
hominem attack and not "opinion" evidence. However, Kesman did not object to these
characterizations during the witnesses' testimony. Therefore, he has waived his complaint. 
See Tex. R. App. P. 33.1(a). We overrule Kesman's issue and affirm the trial court's
judgments in trial cause numbers B070773-R and B070770-R.

 AFFIRMED. 

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on August 6, 2009

Opinion Delivered August 12, 2009

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.