Julian LASSERE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00140–CR.

Court of Appeals of Texas,
San Antonio.

April 20, 1983.

Louis T. Rosenberg, San Antonio, for appellant.

Bill White, Dist. Atty., Bill Harris, Steven Hilbig, John J. Horn, III, Asst. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and TIJERINA, JJ.

## OPINION

BUTTS, Judge.

This appeal is from a conviction for aggravated robbery, with punishment enhanced by a prior conviction. Tex.Penal Code Ann. §§ 29.03(a)(2), 12.42(c) (Vernon 1974). After a jury verdict of guilty, the trial court assessed punishment at sixteen (16) years' imprisonment.

Appellant alleges these errors: that police identification procedures were unduly suggestive and violated due process requirements; that the State denied appellant a constitutionally fair trial by using perjured testimony; that the evidence is insufficient to support the conviction; that the jury charge is defective in three instances. We affirm.

This is a circumstantial evidence case; appellant relied upon the defense of alibi. About 10:00 a.m. on October 26, 1979, a masked man took money at gunpoint from Jim Valdez, the manager of a Sigmor Shamrock station on Southwest Military Drive in San Antonio. In recounting the incident, Valdez told how he grabbed a gun when the robber ran out the back of the station and he shot up in the air. He said the person turned and shot at him while going up the hill behind the station. One bullet pierced the sign four feet above Valdez's head. Valdez, the robbery victim, failed to identify appellant facially when officers brought the suspect to the station about one hour later. Two other witnesses identified him.

Lisa Meissner, an identification witness, testified she went to the car wash located up the hill behind the station that same morning. She observed a man drive a blue car into the car wash and park, alight from it, and go down the hill toward the station. She stated she saw his face plainly, describing his features and his clothing (blue jeans and blue jeans jacket). A few minutes later she heard gunfire, then heard a wom-

an across the street yelling "Get the license plate," but she did not see who got in the blue car and "tore out of the car wash and up the street."

Bridget Heare, manager of the apartments across from the car wash, testified she saw appellant from her window hurrying "backwards" up the hill, carrying a gun and a bag. She heard shots. She saw the man get into a blue car at the car wash and leave hurriedly. She called out the license number of the car to her mother, also present in the apartment, who wrote down the number and called the police. That paper with Heare's initials was admitted at trial. Heare testified she saw appellant's face plainly and described his appearance, including clothing of blue jeans and jacket.

Deputy Sheriff Kenneth Strarup, patrolling in the southern part of Bexar County, heard on his car radio the description of the car, "white over baby blue Mercury," with the license number. Within minutes he saw that car and gave chase. He stated the cars reached speeds nearing 120 miles per hour and that appellant's car veered off the pavement in the semi-rural area off Highway 1604 several times—". . . the man was doing something while he was driving." He saw the car swerve and hit three mailboxes at the side of the road. The other car slowed and stopped; the appellant, driver of the car, offered no resistance and was arrested.

Items recovered off the road in different places near where appellant's car stopped were a blue jeans jacket and a canvas bag containing over $600.00 and "handmade" money wrappers. The bag and wrappers were later identified by Valdez as taken in the robbery. A search of appellant disclosed several hundred dollars in his pockets. Later that day other officers found a woman's hose which, the testifying officer said, had been cut off at the knee. [The robber wore a woman's hose over his head and face]. Strarup testified he did not see any items thrown from appellant's car as he followed, sometimes at the distance of a mile.

Both women identified appellant at the service station. Valdez did not identify him. Appellant argues that the two women gave conflicting statements as to whether he had a moustache in their pre-showup statements to officers, whereas they readily identified him at the station in a one-on-one viewing. Appellant had a light colored moustache. There is no dispute that appellant was brought to the station by police officers, that he was handcuffed, and that there was no other suspect on view. The record reflects unsureness by Meissner about the moustache.

The trial court conducted a pretrial identification hearing and determined that the in-court identification by the two witnesses would be admissible and that the police procedures were not "unduly suggestive." [Valdez did not testify]. Appellant's first two grounds of error attack this finding. Each case must be considered on its own facts to determine the likelihood that a particular pretrial confrontation resulted in irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

Here the showup occurred within two hours of the crime. One justification for the procedure utilized would be to allow the police to continue their search immediately if a person had been mistakenly apprehended. Whether or not a showup procedure "is so unnecessarily suggestive and conducive to irreparable mistaken identification" as denounced in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), depends on the totality of the circumstances surrounding it. *Passmore v. State,* 617 S.W.2d 682, 688 (Tex.Cr.App. 1981) and cases there cited. The admission of evidence of a showup without more does not violate due process. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of the certainty demonstrated by the witness at the confronta-

tion, and the length of time between the crime and the confrontation." *Id.* U.S. at 199–200, 93 S.Ct. at 382–383.

■ Witnesses Meissner and Heare testified at trial that they could identify appellant based on their observations of him at the car wash and on the walk. Such observations would provide an independent basis for the admissibility of their identification testimony. *Passmore, supra,* 617 S.W.2d at 685–686. Valdez admitted at trial he could not identify appellant's face because of the mask. He stated, however, he could identify the appellant because of his clothing and general "build". He testified he could thus identify appellant at the showup. Appellant did not object to the admission of his in-court identification; in fact, defense counsel cross-examined him extensively on the matter of the showup identification. Further, the other two identification witnesses' testimony was similarly admitted without objection and followed by extensive cross-examination. Moreover, there was no motion to strike the in-court identification of any of the witnesses. We conclude that the evidence supports the court's finding at the pretrial hearing that the identification by Meissner and Heare had an origin independent of the complained of showup. The two grounds based on identification error are overruled.

Our disposition of the previous ground necessarily overrules appellant's next contention: that the in-court identification should be excluded as tainted, and that in turn leaves no evidence that it was appellant who committed the offense. Since we have concluded the in-court identification evidence was admissible, the third ground of error is without merit.

■ In his fourth ground of error appellant claims that perjured testimony was used by the State to present a false picture to the jury. Appellant refers to the pretrial identification hearing for his basis. There Detective Clyde King, who conducted the showup, testified that Valdez was not able to identify appellant. During the trial the prosecutor stated outside the presence of the jury that he knew Valdez could not identify appellant. However, on direct examination, Valdez, when asked to compare the person the police presented at the showup to the appellant as to size, physique, build, replied, "The same". He admitted he could not identify the person who robbed him by facial features.

We fail to see how the testimony of Valdez "painted a false picture." *Means v. State,* 429 S.W.2d 490, 494 (Tex.Cr.App. 1968). Nor can this be characterized as perjured testimony. The ground of error is overruled.

■ In another sufficiency of evidence argument appellant asserts the evidence raised merely a suspicion of guilt. Proof which amounts to a mere suspicion is insufficient to sustain a conviction. *Wright v. State,* 603 S.W.2d 838, 841 (Tex.Cr.App. 1979). A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused and proof amounting only to a strong suspicion is insufficient. *Flores v. State,* 551 S.W.2d 364, 367 (Tex.Cr.App. 1977).

A woman friend of appellant testified she met appellant that morning in Somerset, a town south of San Antonio, where he had gone to buy "junk" cars for his boss. She said he was with her after 9:00 a.m. on October 26, 1979, and that she drove toward San Antonio in her car around 10:00 a.m. and the appellant followed in his car, but she "lost" him on the road. The appellant testified he was in Somerset at that same time, and the money recovered from his person belonged to the boss. He added the woman was the girlfriend of his boss, and further, that the reason the boss did not come forward to testify for him was because of the woman. It was suggested by appellant, and in jury argument, that the boss actually committed the offense. The testimony showed that the blue car was rented by the boss; appellant testified that person had a criminal record and that he was involved in some criminal activity at the time of the trial. Further he stated

that people mistook him and the boss for brothers because of a striking resemblance. He stated the officer stopped him when he was returning from Somerset with the car and the money to buy "junk" cars.

■ When this Court reviews the sufficiency of the evidence, it considers the evidence in the light most favorable to the jury's verdict. *Darrington v. State,* 623 S.W.2d 414, 415 (Tex.Cr.App.1981); *Thomas v. State,* 605 S.W.2d 290, 292 (Tex.Cr.App. 1980). In *Thomas,* the Court of Criminal Appeals stated,

> With regard to appellant's alibi defense and any contradictions in the evidence, the jury acted to resolve or reconcile any such conflicts in the testimony. *See, Banks v. State,* 510 S.W.2d 592 (Tex. Cr.App.1974).

As the trier of facts, the jury in the present case judged the credibility of the witnesses and the weight to be given to their testimony, and was free to accept or reject the testimony of any witness. *Thomas v. State, supra* at 292. We find the evidence sufficient to support the conviction and overrule ground of error five.

■ In his sixth ground of error appellant asserts that fundamental error in the jury charge resulted when the jury was permitted to find him guilty of aggravated robbery without finding that Jim Valdez was the owner of the property as alleged in the indictment.[1] Precisely the same indictment and the same jury charge as in the instant case were utilized in *Sattiewhite v. State,* 600 S.W.2d 277 (Tex.Cr.App.1980). Precisely the same argument was advanced by the defendant in that case. Holding the jury charge did not present fundamental error, that Court wrote that the indictment alleged and the proof showed that the defendant engaged in conduct that constituted every essential element of aggravated robbery while he was in the course of committing theft of property. Further, the Court continued, that this part of the charge does not include certain details of the underlying offense of theft alleged in the indictment and proved by the State, viz: "from said complainant . . ., the owner of said property, without the effective consent of said complainant", is not enough to render it fatally defective. *Id.* at 285. Moreover, even when an objection to the charge calls attention to the absence of such factual details, the omission is deemed harmless. *Id.* at 285.

■ An essential element of the offense of aggravated robbery which must be pled and proved is that the offense was committed while "in the course of committing theft." *Evans v. State,* 606 S.W.2d 880, 882 (Tex.Cr.App.1980). Tex.Penal Code Ann. § 29.01(1) (Vernon 1974). If the terms "theft" and "in the course of committing theft" are properly defined in the charge, the jury is only required to find that the offense occurred while "in the course of committing theft" in order to convict. The

---

1. The indictment in this case alleges, in pertinent part:

"... on or about the 26th day of October, 1979, Julian Lassere, Jr., ... did then and there intentionally and knowingly threaten and place Jim Valdez, hereinafter called complainant, in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely: a handgun, while the said defendant was in the course of committing theft of property, namely: Lawful money of the United States of America, from said complainant, the owner of said property, without the effective consent of the said complainant, and said acts were committed by the said defendant with the intent then and there to obtain and maintain control of the said property; ..."

The questioned jury charge in this case states, in pertinent part:

"... Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant in Bexar County, Texas, on or about October 26, 1979, while in the course of committing theft of lawful money of the United States of America from Jim Valdez, and with the intent to obtain or maintain control of the property, did intentionally or knowingly threaten or place the said Jim Valdez in fear of imminent bodily injury or death and did use or exhibit a deadly weapon, to-wit: a handgun, then you will find the defendant guilty of aggravated robbery but if you do not so find, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

\* \* \* \* \* \*

jury charge in the instant case presented these definitions to the jury; it was not necessary that it also allege the elements of theft. We overrule the ground of error.

In two remaining grounds of error appellant complains the trial court refused to define for the jury, as requested, the terms "owner" and "effective consent". The record shows that owner was defined as "a person who has possession of the property." This meets the requirements of the evidence presented in the case and Tex. Penal Code Ann. § 1.07(24) (Vernon 1974). The ground of error is overruled.

No definition of "effective consent", an element of the underlying offense of theft was given. Even where an objection calls such an omission of such factual details to the trial court's attention, such omission would be deemed harmless error. *Sattiewhite v. State, supra* at 285, and cases there cited. The record discloses also that when the trial judge said, "Okay. We will leave it [the instructional definition of theft], like it is," the defense counsel agreed: "Okay." We find any objection was waived. We overrule ground of error eight.

The judgment is affirmed.