Enrique C. LOPEZ, Appellant,

v.

STATE of Texas, Appellee.

No. 04–91–00668–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 11, 1993.

**940**

Paul Stone, Nancy B. Barohn, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before REEVES, C.J., and CHAPA and RICKHOFF, JJ.

## OPINION

REEVES, Chief Justice.

Enrique Lopez appeals his conviction for attempted capital murder. He complains of jury charge error; improper jury argument; the denial of his right to voir dire a reputation witness; and ineffective assistance of counsel. We find reversible error with the punishment trial only. The case is reversed and remanded for a new punishment trial.

### FACTS

While on duty during the early morning hours of February 24, 1991, Deputy Leo Gomez of the Bexar County Sheriff's Department stopped for questioning Enrique Lopez (appellant), a pedestrian. The deputy suspected that appellant was a gang member and stopped to identify him as such. At the end of the questioning, appellant shot the deputy with seven mercury tipped bullets. The deputy returned fire hitting appellant four times.

Appellant was indicted for attempted capital murder. He was tried by a jury. The jury found appellant guilty of attempted capital murder and sentenced him to fifty years confinement in the Institutional Division of the Texas Department of Criminal Justice.

### JURY CHARGE ERROR

In his first point of error, appellant asserts the trial court erred reversibly by refusing to instruct the jury, upon timely

request, on the lesser included offense of attempted voluntary manslaughter.

The State contests appellant's assertion that he preserved the alleged charge error.

During the charge conference, the trial judge proposed to charge the jury on the offenses of attempted capital murder, attempted murder, aggravated assault, self-defense, and voluntary intoxication is no defense.

THE COURT: For the purposes of the record any other charge you want to request, I will give you the opportunity to lodge objections to the charge when I have received it.

ATTORNEY FOR LOPEZ: We can always ask for attempted voluntary manslaughter, Your Honor. We would request that charge.

THE COURT: I don't like to overrule things unless they are asked for.

ATTORNEY FOR LOPEZ: I understand.

THE COURT: That will be denied.

STATE ATTORNEY # 1: Do we have the proposed charge?

STATE ATTORNEY # 2: We don't have it.

THE COURT: It will be down here shortly. Attempted capital murder, attempted murder, aggravated assault, self-defense and intoxication is not a defense.

\*   \*   \*   \*   \*   \*

THE COURT: All right. Both sides have an opportunity to review the charge? State?

\*   \*   \*   \*   \*   \*

THE COURT: Do you have any additional requested instructions?

\*   \*   \*   \*   \*   \*

ATTORNEY FOR LOPEZ: As finally drafted, we have no objection to the charge.

The State asserts that appellant's affirmative declaration that he had no objection to the charge waived his earlier objection to the charge.

■ A dictated objection to a jury charge to the court reporter in the presence of the court and the State's counsel is sufficient to preserve alleged error for review without submission of a requested instruction. Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.1993); see James v. State, 774 S.W.2d 418, 420 (Tex.App.—Dallas 1989, pet. ref'd). A party, however, can waive affirmatively a prior objection to a jury charge.

The case at hand is most like Lassere v. State, 650 S.W.2d 203 (Tex.App.—San Antonio 1983, pet. ref'd). In Lassere the defendant apparently objected to the charge because it contained no definition of effective consent. After reviewing the instruction defining theft, the court concluded the charge would remain unchanged. Defense counsel responded, "Okay." The court held that any objection made by the defendant was waived. Lassere, 650 S.W.2d at 208. Appellant, like the Lassere defendant, ratified the final charge. In fact, the case of affirmative waiver is stronger in the case at hand because counsel for appellant stated, "As finally drafted, we have no objection to the charge." Counsel for appellant was clear that he found no fault with the charge as finally drafted without the attempted voluntary manslaughter instruction. In Lassere, at least counsel's remark is open to the interpretation that he acknowledged rather than ratified the trial judge's final decision, erroneous as it may be.

A different result was reached in Rasmussen v. State, 608 S.W.2d 205 (Tex.Crim.App. 1980). In Rasmussen the defendant objected to the charge because it failed to charge upon a lesser included offense. The court overruled the objection. Then the court inquired of defense counsel, "Do you have any further objections to the charge?" Defense counsel responded, "No further objections." The Rasmussen court held that defense counsel did not expressly waive his previous charge objection. Rasmussen, 608 S.W.2d at 211. We distinguish Rasmussen from the case at hand. Defense counsel in Rasmussen was clear that he was not waiving his prior charge objection: he said I have "no further objections." Counsel for appellant stated, however, that he had no objection to the charge "as finally drafted." Because the charge as finally drafted did not have the

requested lesser included offense instruction, appellant waived his prior objection.

We hold that appellant waived affirmatively his objection to the alleged jury charge error.

■ Even where a lesser included offense is supported by the evidence, the failure of defense counsel to request a charge on the offense or properly object to its omission constitutes a waiver. *Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990). Because appellant waived the alleged error of which he complains, we overrule his first point of error.

### IMPROPER JURY ARGUMENT

In a second point of error, appellant asserts he was denied a fair trial at the punishment phase of his trial because of repetitive, improper jury arguments.

Appellant complains that three jury arguments made by the State were impermissible.

First, during the guilt-innocence phase of trial the prosecutor stated:

> You know, we are supposed to be a civilization and that means that we live by laws, not by guns. And it is really up to you folks to determine and send that message not only to Enrique Lopez, but all the others, are we going to return to the old west and live by the faster draw? Surely not.
>
> Can you imagine the message that you would send if you did not find this defendant guilty of attempted capital murder? **Can you imagine the bloodshed that you would unleash in Bexar County with all the little gangsters out there laughing, Well, Henry our hero, he beat it, he got off. That is frightening.** (emphasis added)
>
> Can you imagine what message you would be sending to your soldiers, your first line defense in the war on crime? We don't care about you. Surely you wouldn't do that. That is frightening.
>
> And in light of everything that you have heard about and from this defendant, I

mean, really what message are you sending to Leo Gomez?

Second, during the punishment phase of trial the prosecutor stated:

> **We know what he is capable of doing.** [Appellant] has told you himself, although variously characterizing it as a mistake or as his mother said, a little mistake, **we know what he is capable of.**
>
> **Look at what happened up at Luby's in Killeen two or three weeks ago.** If anybody had any idea—(emphasis added)

Third, the prosecutor continued by arguing:

> If we know about people before they do things, maybe we could stop them. But, folks, you know what he can do. And you decide what to do with him. **Does he walk out with you? Does he ride the elevator down with you?** Or does he go to the Texas Department of Criminal Justice Institutional Division for as long as you can possibly put him away? (emphasis added)

■ The law provides for, and presumes a fair trial, free from improper argument by the prosecuting attorney. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex.Crim.App.1990). In Texas, proper jury argument must fall within one of four general categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Borjan*, 787 S.W.2d at 55. Usually any harm resulting from an improper jury argument by the prosecutor is obviated when the objection to the instruction is sustained and the jury instructed to disregard the argument. *DeBolt v. State*, 604 S.W.2d 164, 170 (Tex.Crim.App.1980). An improper argument constitutes reversible error when in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the trial proceedings. *Borjan*, 787 S.W.2d at 56–57.

We consider whether the first and third arguments cited by appellant were improper jury argument requiring reversal of his punishment sentence.

■ Appellant did not object to the first and third jury arguments. Improper jury argument can be waived when the defendant fails to make a proper and timely objection. *Briddle v. State,* 742 S.W.2d 379, 389 (Tex. Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543 (1988). An exception exists where the prosecutor's argument is so prejudicial that an instruction to disregard will not cure the harm. *Briddle,* 742 S.W.2d at 389.

■ The first argument made by the prosecutor stresses the impact of the jury's verdict on narrower groups making up the community, namely gangs and the police. There was ample evidence in the record that appellant belonged to a gang so the argument was a reasonable deduction from the evidence. The State is entitled to argue the impact of a jury's verdict on narrower groups making up the community because the jury is reminded of the effect that their verdict may have on the rights of a particular segment of the community. *Borjan,* 787 S.W.2d at 56. Consequently, the first argument made by the prosecutor was proper jury argument.

■ The third cited jury argument insinuates that jury members could be future victims if appellant is given probation rather than a jail sentence.

Similar arguments have been upheld by other Texas courts as proper pleas for law enforcement. During the guilt-innocence phase and punishment phases of trial it was proper for the State to argue, "[W]hat I'm mainly concerned with is he is not out among the public, living next door to you or to anybody else." *DeBolt,* 604 S.W.2d at 169–70. It was proper for the State to argue during a capital murder trial, "I just say this, that I hope he doesn't come knocking on one of your doors at eight o'clock in the evening—." *Starvaggi v. State,* 593 S.W.2d 323, 328 (Tex.Crim.App.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980). During a driving while intoxicated trial it was proper for the State to argue, "And I ask you to find the defendant guilty and all those like him because we are all going to get in our cars, and we are going to go home." *Nichols v. State,* 504 S.W.2d 462, 465 (Tex.Crim.App.1974). Finally, it was proper for the State to argue, "You are all

potential victims of people like Maurice Esparza and Simona Roma, and [sic] decide whether probation is punishment." *Esparza v. State,* 725 S.W.2d 422, 427 (Tex.App.— Houston [1st Dist.] 1987, no pet.).

Appellant cites *United States v. McRae,* 593 F.2d 700 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979) as authority for reversing appellant's sentence because of the third jury argument. In *McRae* the prosecutor argued:

> And remembering that credibility, ladies and gentleman, remember that you don't have to believe a word of what [the defendant] told you if you don't want to. . . . Or if you want to, you can believe all of it and turn him loose, and **we'll send him down in the elevator with you with his gun. He'll go out the front door with you.**

*McRae,* 593 F.2d at 706. The court affirmed defendant's conviction despite finding the jury argument inflammatory because evidence of the defendant's guilt was overwhelming and because the improper remark occurred only once early in the argument. *McRae,* 593 F.2d at 707. The court warned that "[t]he weight of evidence in this case approaches the unique, and were it only a little less we might be forced to reverse." *McRae,* 593 F.2d at 707. Appellant argues that because the evidence supporting defendant's conviction was not as strong as in *McRae,* a new punishment trial is required because the jury argument was calculated to inflame the jury's passions resulting in a verdict that was based on logic rather than emotion.

■ This court is not bound by the decisions of lower federal courts. *See Stewart v. State,* 686 S.W.2d 118, 121 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985); *Flores v. State,* 487 S.W.2d 122, 126 (Tex.Crim.App.1972). Further, *McRae* is distinguishable because the prosecutor in the case at hand did not argue that appellant would be armed while traveling in the elevator.

The third prosecutorial argument was proper.

■ Because the second prosecutorial argument does not come within the general areas of proper jury argument, the argument was improper.

■ The general rule is that an instruction to disregard this type of argument will usually cure any error unless the prosecutor subsequently attempts to circumvent the court's ruling that such argument was improper. *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Crim.App.1982).

■ The trial court sustained appellant's objection to the State's argument and instructed the jury to disregard the argument. Appellant's motion for mistrial was denied. No further reference was made to the Killeen murders. We find the improper argument was cured by the court's instruction. Given the record as a whole, the State's jury argument was not so extreme or manifestly improper that the accused was deprived of a fair and impartial trial.

Appellant's second point of error is overruled.

## REPUTATION WITNESS VOIR DIRE

Appellant asserts in a third point of error that the trial court erred reversibly at the punishment phase of trial when the court refused a timely defense request to voir dire a State's reputation witness outside the presence of the jury.

Rule 405 of the Texas Rules of Criminal Evidence provides:

(a) **Reputation or Opinion.** In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Provided however that to be qualified to testify concerning the character or trait of character of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

TEX.R.CRIM.EVID. 405(a).

■ The procedure to be followed when admitting reputation testimony is to permit the opposing party to test the qualification of the witness outside the presence of the jury before he testifies as to the defendant's reputation. *Jones v. State*, 641 S.W.2d 545, 552 (Tex.Crim.App.1982); *Crawford v. State*, 480 S.W.2d 724, 726 (Tex.Crim.App.1972).

■ During the punishment phase of trial, appellant asked the trial court for an opportunity to question the State's reputation witness, Detective Bratton, outside the presence of the jury before the witness could testify before the jury. The trial court erred by denying appellant's request. *See Jones*, 641 S.W.2d at 551; *Crawford*, 480 S.W.2d at 726.

■ Testimony about a defendant's reputation must be based on discussions with others about the defendant, or on hearing others discuss the defendant's reputation. *Jackson v. State*, 628 S.W.2d 446, 450 (Tex. Crim.App.1982). Rule 405 requires substantial familiarity with the reputation of the accused. *Hernandez v. State*, 800 S.W.2d 523, 524–25 (Tex.Crim.App.1990). Substantial familiarity with specific acts is not substantial familiarity with reputation. *Hernandez*, 800 S.W.2d at 524.

The trustworthiness of reputation testimony stems from the fact that a person is observed in his day to day activities by other members of his community and that these observations are discussed. Over a period [of] time there is a synthesis of these observations and discussions which results in a conclusion as to the individual's reputation. When reputation is based solely on specific acts, this synthesis is lost, as well as its reliability.

*Hernandez*, 800 S.W.2d at 524 (citing *Wagner v. State*, 687 S.W.2d 303, 313 (Tex.Crim. App.1985)). Mere knowledge of specific acts alone as a basis for reputation testimony violates the rationale for admitting such testimony in the first place. *Turner v. State*, 805 S.W.2d 423, 429 (Tex.Crim.App.1991),

*cert. denied,* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

After Detective Bratton testified before the jury as to appellant's bad reputation, the trial court realized the error of not allowing appellant to first question the detective outside the presence of the jury. Consequently, the trial court allowed appellant to make an offer of proof outside the presence of the jury. On the offer of proof the detective testified that he based his opinion about appellant's reputation on a single report from an unknown informant received two or three days before the date of the offense. Detective Bratton was advised that "Rick Lopez" was in possession of weapons stolen from a minister's house. The detective believed that "Rick Lopez" and appellant were the same person based upon the address given for "Rick Lopez" by the informant; the address he was given was "out in the county."

Detective Bratton was not qualified to testify as a reputation witness: He was not substantially familiar with the reputation of the accused since his only familiarity was with alleged specific acts of the appellant; and he did not hear others discuss appellant's reputation.

We have determined that the trial court erred by not allowing voir dire examination of a reputation witness before the witness testified and by admitting this testimony when the witness was not qualified to testify about appellant's reputation.

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2).

In summary, a reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial. Instead, an appellate court should be concerned with the integrity of the process leading to the conviction. Consequently, the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

General consideration having been set out, we are left only to provide a skeleton on which to place them. A procedure for reaching this determination should: first, isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of an individual case; and second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.

*Harris v. State,* 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989).

First, this court shall isolate the error and all its effects.

The State contends the error was harmless because similar evidence was admitted properly elsewhere in the record. The State called another reputation witness, the assistant principal of appellant's high school. The principal testified that appellant's reputation for being peaceful and law abiding was bad. Appellant does not challenge the admissibility of this reputation testimony.

Detective Bratton's testimony was cumulative of the assistant principal's testimony. Cases decided before *Harris* would support a finding of harmless error. *See Davis v. State,* 642 S.W.2d 510, 513 (Tex.Crim.App. 1982); *Jackson v. State,* 628 S.W.2d 446, 451 (Tex.Crim.App.1982); *Domanski v. State,* 665 S.W.2d 793, 799 (Tex.App.—Corpus Christi 1983), *pet. ref'd untimely filed,* 725 S.W.2d 717, 725 S.W.2d 718 (Tex.Crim.App. 1986). We follow the dictate of *Harris* and perform a more thorough analysis.

In further support of harmless error the State points out that the erroneously admitted testimony was not embellished during closing argument. The State did not mention Detective Bratton's testimony during closing argument.

Lastly, the State points to other evidence in the record that reflects poorly on appellant's character: appellant knew how to prepare mercury tipped bullets; he shot a policeman with seven mercury tipped bullets; appellant once boasted to a friend, "I will shoot a cop before I ever go to jail"; appellant was a member of the Klick gang; he had participated in drive-by shootings; had participated in a gang assault on another student in school which resulted in appellant's expulsion from any school in the Northside Independent School District; and that appellant rebelled against rules imposed by his mother at home.

The trial court was the source of the error. Consequently, declaring the error harmless would not encourage the State to repeat any behavior with impunity. ·

■ Despite the mitigating factors presented by the State, the effect of Detective Bratton's testimony is disturbing. Detective Bratton testified to the sole conclusion that appellant's reputation in the community for peacefulness and lawfulness was bad. As a member of the repeat offenders program with the San Antonio Police Department, Detective Bratton's testimony was clothed with the authority of law enforcement; certainly if the repeat offenders program knew about appellant's bad reputation, this supposes appellant has a history of criminal behavior. When sentencing a defendant, jurys may consider not only what sentence will punish the defendant but also what sentence is appropriate to deter future crimes: if the defendant cannot be rehabilitated his sentence should be extended to protect society. The effect of Detective Bratton's testimony is that it impacts the jury's application of the law to the facts in reaching a punishment verdict because the testimony reflects poorly on appellant's chance of rehabilitation: recidivism is worse for repeat offenders than for first time offenders. There was ample evidence of other bad acts by appellant. This court, however, is not to consider the weight of other evidence.

After consideration this court finds that the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence. The error might possibly have prejudiced the jurors' decision-making. The punishment trial was not essentially a fair one.

Having isolated the error and all its effects, this court asks whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. This court answers this question affirmatively.

We sustain appellant's third point of error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In a fourth point of error appellant asserts he is entitled to a new trial because he was denied his constitutional right to the effective assistance of counsel. In the brief of his argument appellant explains that, "Mr. Lopez does not believe that his trial counsel waived error. If this Honorable Court were to concluded [sic] that trial court waived error, then Mr. Lopez contends that he received ineffective assistance of counsel at his trial sufficient to undermine confidence in the outcome of the verdict." We found that appellant waived any jury charge error during the guilt-innocence trial. Consequently, we assume this is the error of which appellant complains.

■ To be entitled to a new trial because of the ineffective assistance of counsel, appellant must show first, that counsel's performance was deficient and, second, that the

deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065. Appellant identifies the acts or omissions as any error his counsel may have waived which is jury charge error.

The defendant must show that particular errors actually had an adverse effect on the defense; it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. Appellant, however, fails to make such a showing: he alludes generally to any waiver this court could find and fails to discuss how his defense was affected adversely. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Because appellant failed to make the required showing of either deficient performance or sufficient prejudice, his ineffectiveness claim is defeated. *See Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071. Appellant's fourth point of error is overruled.

The punishment verdict is reversed; the case is remanded for a new punishment trial.