In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-173 CR


____________________



CHRISTOPHER SCOTT, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. 23,721






O P I N I O N


 Christopher Scott was convicted by a jury of aggravated sexual assault of a child
younger than fourteen years of age. See Tex. Pen. Code Ann. § 22.021(a)(1)(A)(i), (2)(B)
(Vernon Supp. 2005). Scott was sentenced by the jury to fifty years' confinement in the
Texas Department of Criminal Justice, Institutional Division. Scott appeals raising three
points of error.

 In his first point, Scott argues the trial court committed reversible error by not
allowing him to cross-examine the State's witness, Steve Burney, as to his mental state. 
Burney is the father of J.P., the victim. Burney testified he found his son and Scott naked in
his son's bedroom between 1:00 and 2:00 a.m. That discovery and confrontation that led to
J.P.'s outcry the next day that Scott had sexually assaulted him. 

 On cross-examination of Burney by defense counsel, the following exchange
occurred: 

 Q. Are you on any medication?

 A. Yes, sir.

 Q. What kind?

 A. Respiridol [sic] and Tegretol.

 . . . .

 Q. What do those do?

 A. Help me - help keep me from being moody.

 Q. Okay. You've been to Rusk, (1) haven't you, sir?

 A. Yes, sir.

 The State then objected on the grounds of relevancy. The trial court sustained the
objection and instructed the jury to disregard. Defense counsel requested to make an offer
of proof later, to which the trial court agreed. The offer of proof, heard outside the presence
of the jury, established Burney had been to Rusk "quite a few times," "[y]ears ago" and
recently. Burney said he "went twice to Rusk after this event." Burney further testified he
went to Palestine (2) twice, stayed for two weeks every time, and was there just before this
event. At that time, Burney was on medication and under a doctor's care.

 Burney testified he was currently on medication for his condition and had been
diagnosed as chemically unbalanced by the Burke Center. Burney said he was currently
under the care of Dr. Learned at the Burke Center. According to Burney, the chemical
imbalance does not affect his ability to see, think, or relate to people, he does not have
delusions, and does not suffer from paranoia. 

 On re-direct examination, Burney testified he has also been to Vernon State Hospital,
and said, "I've been to quite a few." Burney stated he does "odd things" if he fails to take
his medication, but it does not affect his vision or ability to think. Burney said he takes his
medication "all the time . . . unless I run out." He was not taking his medication on the night
in question because he was stable and did not need it; he had quit taking the medication two
months earlier because Dr. Learned told Burney that he did not need it.

 Defense counsel offered the evidence into the record, "[f]or the purpose of the
credibility of this witness." The trial court refused to admit the testimony on the grounds
"[i]t has nothing to do with credibility."

 The law is well settled that the credibility of the witness, and the weight to be given
his testimony, is a matter for the jury to decide. See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979). In passing upon such testimony, the jury is entitled to hear evidence as to
the mental status of the witness and the extent of his mental impairment. See Saucier v.
State, 156 Tex. Crim. 301, 235 S.W.2d 903, 915-16 (1950) (op'n on rehearing). "[T]he
mental capacity of the witness is the proper subject of consideration and impeachment as
bearing upon his credibility." Bouldin v. State, 87 Tex. Crim. 419, 222 S.W. 555, 557
(1920). Therefore, the right to cross-examination includes the right to impeach the witness
with evidence that might go to any impairment or disability affecting the witness's
credibility. See Saglimbeni v. State, 100 S.W.3d 429, 435 (Tex. App.--San Antonio 2002,
pet. ref'd), (citing Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)). See also
Sidney v. State, 753 S.W.2d 410, 413 (Tex. App.--Houston [14th Dist.] 1986, pet. ref'd) (The
trial court should have allowed appellant to cross-examine witness on the duration, extent,
and treatment of his mental condition). 

 However, . . . the mere fact that the State's testifying witness has in the recent
past suffered or received treatment for a mental illness or disturbance does not,
for this reason alone, cause this kind of evidence to become admissible
impeachment evidence. If the witness is shown to have been suffering from
a recent mental illness, prior to the occurrence of the event in question, and
such might be considered a "persistent disabling disturbance of his mental
and/or emotional equilibrium, manifested through persistent maladjustment
and more or less irrational, even bizarre behavior and speech,". . . then, of
course, the trial judge should permit the jury to hear this kind of evidence.


Virts, 739 S.W.2d at 30.

 The decision as to whether evidence is admissible must be decided on an ad hoc basis,
with great deference being given the trial judge making the initial decision whether that
evidence should be admitted for the jury's consideration. Virts, 739 S.W.2d at 28. The right
of cross-examination is not without limits and the trial judge retains wide latitude to impose
reasonable constraints based upon concerns about harassment, prejudice, confusion of issues,
and the witness's safety, among other things. Id. The trial court's decision to restrict the
extent of cross-examination of a witness as to credibility is not subject to reversal absent a
clear abuse of discretion. See Cantu v. State, 939 S.W.2d 627, 635 (Tex. Crim. App. 1997). 
 The offer of proof clearly demonstrates Burney had suffered a recent mental illness
or disturbance prior to the night in question. In point of fact, the evidence indicates Burney's
illness is ongoing, and persisted through and beyond that night. What the evidence does not
show is that it affected his credibility. See Saglimbeni, 100 S.W.3d at 435. 
"Cross-examination of a testifying State's witness to show that the witness has suffered a
recent mental illness or disturbance is proper, provided that such mental illness or
disturbance is such that it might tend to reflect upon the witness's credibility." Virts, 739
S.W.2d at 30. The testimony elicited does not demonstrate Burney's mental illness affected
his perception of events. Cf. Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997)
(To pursue impeachment of a witness' perceptual capacity with evidence of drug addiction,
counsel must demonstrate actual drug-based impairment during the witness' observation of
the crime). Accordingly, we cannot say the trial court abused its discretion in not permitting
the jury to hear the evidence. Issue one is overruled.

 Scott's next two points of error concern the testimony of Officer Bo Price during the
punishment phase of trial. Point of error two claims the trial court erred in denying the
timely request by defense counsel to voir dire a State's reputation witness outside the
presence of the jury. Point of error three contends the trial court erred in allowing testimony
regarding appellant's reputation from a State's witness not qualified to testify as a reputation
witness. The State called Officer Price, a narcotics investigator for the Lufkin Police
Department, to the stand. Price testified as follows: 

 Q. Are you familiar with the Defendant in this case, Christopher Scott?


 A. Yes, ma'am, I am.


 Q. And are you familiar with his reputation in the community as a peaceful and
law abiding citizen?


 A. Yes, ma'am, I am.


 Q. And is that reputation - -


 [Defense counsel]: Your Honor, may I take this witness on voir dire for just
a minute?


 THE COURT: No. You can cross-examine him, though.


 Q. (By [The State]) And is that reputation good or bad?

 

 A. Bad.


 [The State]: I'll pass the witness, Your Honor.


CROSS-EXAMINATION



 BY [Defense Counsel]:


 Q. Officer Price, who have you talked to regarding Mr. Scott's reputation?


 A. I'm referring to my personal knowledge of him.


 Q. So you don't know what the community thinks of Mr. Scott, only what you
think?


 A. Yes, sir. I believe you're correct. That's correct.


 [Defense Counsel]: Pass the witness, Your Honor.


REDIRECT EXAMINATION



 BY [The State]:


 Q. You've also talked to lots of other officers about the Defendant. Is that true?


 A. Yes, ma'am.


 Q. His name is common - -


 A. Yes, ma'am.


 Q. - - with the police department?


 A. Yes, ma'am.


 [The State]: I'll pass the witness, Your Honor.


 [Defense Counsel]: No further questions, Judge.


It is Price's testimony, and the trial court's failure to permit defense counsel to voir dire him,
that appellant complains of on appeal.

 Article 37.07, section 3, of the Code of Criminal Procedure provides that after a
finding of guilt, evidence may be offered by either party as to the defendant's general
reputation or character, or an opinion regarding his character. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2005); Bluitt v. State, 137 S.W.3d 51, 54 (Tex.
Crim. App. 2004). That evidence, however, must be offered in accordance with the well-settled law of this State allowing appellant's counsel to voir dire the witness prior to his
testifying. See Jones v. State, 641 S.W.2d 545, 551 (Tex. Crim. App. 1982). The Jones court
"wholeheartedly agree[d]" the trial court erred by refusing to permit voir dire, and noted, 

 Because of the many decisions of this Court on this point, we are compelled
to classify such error as "grievous error." The proper procedure to be followed
is set out in Crawford v. State, [480 S.W.2d 724 (Tex. Crim. App. 1972)]. In
Crawford v. State, op.cit., this Court stated the following: "The procedure to
be followed is to permit the opposing party to test the qualification of the
witness before he testifies as to the defendant's reputation... if the witness is
permitted to first give his opinion and it is then determined that he was not
qualified to give such opinion, harm which cannot be cured may be done." For
the very obvious reason that was stated in Crawford, Id., the voir dire
examination should always occur outside the jury's presence.


Id. at 551-52 (citations omitted). See also Hernandez v. State, 800 S.W.2d 523, 524 (Tex.
Crim. App. 1990) (reputation witnesses were questioned on voir dire); Castillo v. State, 739
S.W.2d 280, 291 (Tex. Crim. App. 1987) (witness' qualifications were tested in a hearing
outside the jury's presence before being permitted to testify as a reputation witness); Wagner
v. State, 687 S.W.2d 303, 312 (Tex. Crim. App. 1984) (prior to testifying about appellant's
reputation in the community, witness was taken on voir dire); Jackson v. State, 628 S.W.2d
446, 450 (Tex. Crim. App. 1982) (State's reputation witnesses were examined on voir dire
outside the presence of the jury); Manning v. State, 126 S.W.3d 552, 555 (Tex. App.--
Texarkana 2003, no pet.) (reputation witness was questioned on voir dire outside the jury's
presence before testifying before the jury); Smith v. State, 857 S.W.2d 65, 69-70 (Tex. App.
--Tyler 1993, no pet.) (appellant sought and received permission to question witnesses on
voir dire before they expressed an opinion on appellant's reputation); Lopez v. State, 860
S.W.2d 938, 944 (Tex. App.--San Antonio 1993, no pet.) (finding trial court erred by
denying appellant's request to voir dire State's reputation witness outside the presence of the
jury). In accordance with the authority set forth above, we find the trial court erred in
denying appellant's request.

 Our inquiry does not end here, however, as it is equally well-settled law that the mere
refusal of a trial judge to allow voir dire examination of such a witness is not per se
reversible error. See Jones, 641 S.W.2d at 552. For the error to be reversible, the record on
appeal must show the witness was not qualified to testify. Id. The Court of Criminal
Appeals in Turner succinctly set forth the requisites for admitting testimony from a
reputation witness:

 A reputation witness's testimony must be based on discussion with
others concerning the defendant, or on hearing others discuss the defendant's
reputation, and not just on personal knowledge. Jackson v. State, 628 S.W.2d
446, 450 (Tex.Cr.App.1982). Discussions with other police officers are
sufficient to qualify a witness on reputation. Martin v. State, 449 S.W.2d 257
(Tex.Cr.App.1970); see and cf. Hernandez [ v. State, 800 S.W.2d 523
(Tex.Cr.App.1990)]. General reputation testimony is admissible even though
it is partially based on discussions concerning the offense for which the
defendant is being tried, if it is also based on a discussion of matters other than
the instant offense. Castillo v. State, 739 S.W.2d 280, 292 (Tex.Cr.App.1987),
cert. denied, 487 U.S. 1228, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988). Thus,
reputation opinion must be at least partially based on a discussion of matters
other than the actions or offenses for which the defendant is being tried. 
Watson v. State, 605 S.W.2d 877 (Tex.Cr.App.1979); Gholson v. State, 542
S.W.2d 395 (Tex.Cr.App.1976), cert. denied, 432 U.S. 911, 97 S.Ct. 2960, 53
L.Ed.2d 1084 (1977).


Turner v. State, 805 S.W.2d 423, 429 (Tex. Crim. App. 1991).

 When asked who he had talked to about Scott's reputation, Officer Price answered
that he was referring to his own personal knowledge and admitted that he did not know what
the community thought of Scott. On redirect, Price agreed he had "talked to lots of other
officers" about Scott and that his name was "common" with the police. Price's testimony
does not reveal any discussion with members of the community regarding Scott and gives
no indication as to whether his discussions with other officers were about matters other than
the instant offense. Cf. Adanandus v. State, 866 S.W.2d 210, 226 (Tex. Crim. App. 1993)
(it was established on voir dire that the conclusions of the three officers regarding appellant's
reputation were based upon discussions with other police officers concerning various
criminal activities of appellant and their own investigations of appellant, including
discussions with members of the community during those investigations, and at least ten
years of contact with appellant); Turner, 805 S.W.2d at 429 (witness learned of appellant's
reputation through conversations with community members prior to instant offense and his
testimony was not based upon bare knowledge of crime that witness was investigating or
upon other specific acts by appellant); Castillo, 739 S.W.2d at 291 (witness had based his
opinion on talking to several ordinary citizens on various occasions in the last three or four
years, his own experiences with appellant when he was a juvenile, other instances of
misconduct, criminal activity the witness heard about but did not personally investigate, as
well as his investigation of the instant case).

 In Lopez, the court found the witness was not qualified where the detective based his
opinion on appellant's reputation upon a single report from an unknown informant, received
two or three days before the offense at issue. Lopez, 860 S.W.2d at 945. The court held the
witness "was not substantially familiar with the reputation of the accused since his only
familiarity was with alleged specific acts of the appellant; and he did not hear others discuss
appellant's reputation." Id. Similarly, in Manning the court found the trial court abused its
discretion in allowing the witness to testify regarding Manning's reputation because the basis
of the witness' knowledge was one personal observation and two reports of specific acts. 
Manning, 126 S.W.3d at 555. The court recognized there was no evidence the witness
discussed Manning with anyone, official or civilian, within in any community and found such
a foundation failed to establish the proper predicate. Id. at 556. The court noted "[t]he State
failed to ask any questions on redirect examination that might have established the proper
predicate. . . ." Id.

 Nothing in Officer Price's testimony establishes his discussions with other officers
concerned matters other than the instant offense. See Turner, 805 at 429. Accordingly, the
State failed to establish the proper predicate. We therefore find Price was not qualified to
testify regarding appellant's reputation.

 We now turn to a harm analysis pursuant to Tex. R. App. P. 44.2(b) to determine if
the error was such as to affect the substantial rights of the accused. "The inquiry is whether
the defendant's substantial rights were violated and whether the appellant's punishment was
affected by the judgment. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)." 
Bain v. State, 115 S.W.3d 47, 51 (Tex. App.--Texarkana 2003, pet. ref'd). "A substantial
right is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict." King, 953 S.W.2d at 271 (citing Kotteakos v. U.S., 328 U.S.
750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). To determine whether Price's testimony
affected the jury's decision on punishment, we consider the other evidence the jury heard. 
See Bain, 115 S.W.3d at 51-52.

 The State first called Mark Gorman, a juvenile probation officer with Angelina
County. Gorman knew Scott for approximately six years through his duties as a probation
officer; Scott had been on Gorman's caseload. Scott was first placed on "deferred
prosecution" for arson in April of 1999. Scott's next offenses occurred in March and April
of 2001 and were two counts of unauthorized use of a motor vehicle, and one count of
engaging in organized criminal activity. Scott was placed on probation for one year. As part
of the terms of his probation, Scott was randomly drug tested. He tested positive for THC,
the active ingredient in marijuana, and admitted to smoking marijuana once after a drug test
came back negative. Scott was in school at the time, and had a difficult time due to his
behavior. Scott spent most of his time at the alternative school. Scott was detained in the
Angelina County Juvenile Detention Center in December of 2001, following probation
violations. Gorman testified that he has approximately one contact a month with a "normal
probationer" but averaged four or five with Scott. According to Gorman, he had to provide
a lot of structure for Scott and "stay on" him. Gorman said if he "stayed on" Scott, Scott did
what he asked, but if Gorman did not, Scott would start "to fall." 

 On cross-examination, Gorman testified he would classify Scott as a follower and
someone who was fairly easily influenced. Gorman said Scott associated with a particular
"crew," which included mostly family members and engaged in "gang-like activities."
Gorman tested Scott a number of times for drugs, probably more than ten, and testified
"drugs really weren't an issue with him." Gorman agreed that Scott responds well to
structure but was uncertain whether probation would provide the intensive structure he had
been providing Scott. Regarding the charge of unauthorized use of a motor vehicle in March
of 2001, Gorman testified there were four people in the car, one adult and three juveniles. 
Gorman agreed it was "a following type of situation." 

 Gorman agreed on re-direct examination that most of the people Scott spent time with
were also on juvenile probation and engaged in criminal behavior, even though, as a
condition of probation, Scott was ordered not to spend time with other people on probation. 
In Gorman's opinion, Scott still had problems following the rules with contact averaging
once a week. Gorman clarified his testimony about Scott doing well in a structured
environment and stated he "was talking more as detention. Once he was placed in detention,
. . . he did excellent in detention. We have a level, and four being the highest. He normally
stayed on level four. At that time, that was the first time, I think, he'd really had the structure
he needed." Gorman testified, "I can honestly say he did excellent in detention with that
structured environment that we provide." Gorman agreed detention was "totally different
from being on probation." 

 The record reflects Officer John Davis of the Lufkin Police Department was also
called to testify during punishment. (3) Officer Davis testified he was familiar with Scott
through his duties as an investigator for juvenile crimes and had dealt with Scott on the
offenses of engaging in organized criminal activity, unauthorized use of a motor vehicle, and
theft. Davis was asked, "do you have an opinion as to the Defendant's reputation as a
peaceful and law abiding citizen in the community?" Davis said, "I don't think it's highly
rated. . . . Basically, I think he's a thief." On cross-examination, Davis testified that was his
opinion, not the community's opinion. Davis conceded he did not know what Scott's
reputation was in the community. 

 Tom Hipps, the discipline coordinator at the alternative school for the Lufkin
Independent School District, also testified for the State during the punishment phase. Hipps
was familiar with Scott and had known him several years. According to Hipps, Scott spent
a "good bit" of time at the alternative school. Hipps was unsure what Scott was referred for
but testified students are sent there for behavioral reasons. Hipps said Scott performed
poorly, misbehaved, refused to do his work, and talked. When students get in trouble at the
alternative school, they are sent to Hipps, and he dealt with Scott on many occasions. For
the 2000-2001 school year, Scott was sent out of class seventy-six times for discipline
reasons, and suspended twelve times, for activities such as throwing over desks, throwing
things at teachers and using obscene language. The next year, Scott received nineteen
"write-ups" and ten suspensions. The notices include throwing things at and threatening
students, and being disrespectful to and throwing things at teachers. Hipps opined that Scott
can follow the rules, but chooses not to. 

 During closing argument, defense counsel asked for probation. No other sentence was
suggested. In its closing, the State informed the jury the punishment range was five to
ninety-nine years and acknowledged Scott qualified for probation. The State argued against
probation, focusing on Scott's inability to follow the rules and the escalation of Scott's
criminal activities to the instant offense, the repeated aggravated sexual assault of a ten-year
old boy. The State never mentioned Scott's reputation or the testimony regarding it. Cf.
Aleman v. State, 49 S.W.3d 92, 96 (Tex. App.--Beaumont 2001, no pet.).

 In examining the record to assess harm, we consider the source and nature of the error;
the extent to which the State emphasized it; the probable collateral implications of the error;
the weight a juror would probably place upon it (in light of whether the record contains
overwhelming evidence supporting the finding in question); and whether declaring the error
harmless would encourage the State to repeat it with impunity. See Roberson v. State, 100
S.W.3d 36, 44 (Tex. App.--Waco 2002, pet. ref'd). The trial court was the source of the error
and the error resulted in the admission of Price's testimony that Scott's reputation was "bad"
and his name "common" with police. The State did not emphasize it. In light of the other
evidence introduced at punishment, a juror would probably not place much weight on Price's
testimony. Since the error was not the State's, declaring it harmless would not encourage the
State to repeat it.

 The jury assessed Scott's sentence at confinement for fifty years. In light of the
properly-admitted evidence, we cannot say the testimony of Officer Price affected appellant's
punishment. See Bain, 115 S.W.3d at 51-52. The trial court's error did not have a
substantial or injurious influence on the jury's decision; therefore the error is harmless. Issue
three is overruled.

 The judgment of the trial court is AFFIRMED.


 ________________________________

 CHARLES KREGER

 Justice


Submitted on February 9, 2005 

Opinion Delivered April 20, 2005

Publish


Before Gaultney, Kreger, and Horton, JJ.

1. Rusk State Hospital.
2. The actual hospital in Palestine is not identified.
3. In its brief, the State alleges appellant is also complaining of Officer Davis'
testimony. While appellant's brief parenthetically alludes to a lack of evidence that Davis
was familiar with Scott's reputation in the community, no such argument is presented. 
Moreover, as no objection was made to Davis' testimony, no such argument would be
considered. See Tex. R. App. P. 33.1.